(No. 68487.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DARRYL J. WILLIAMS, Appellee.

*Opinion filed February 16, 1990.*

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Nathan P. Maddox, Assistant Attorneys General, of counsel), for the People.

George F. Taseff and Harold M. Jennings, of Jennings, Novick, Ensign & Ostling, of Bloomington, for appellee.

JUSTICE RYAN delivered the opinion of the court:

In a one-count bill of indictment, a grand jury in McLean County charged the defendant, Darryl J. Williams, with child abduction as defined in section 10—5(b)(10) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)). The circuit court of McLean County granted the defendant's motion to dismiss the indictment on the ground that section 10—5(b)(10) is impermissibly vague, in violation of the defendant's due process rights under the United States and Illinois Constitutions (U.S.

Const., amend. XIV; Ill. Const. 1970, art. I, §2). Because the circuit court held invalid a statute of this State, the State appeals directly to this court pursuant to our Rule 603 (107 Ill. 2d R. 603). We reverse and remand.

On May 19, 1988, Normal police detectives arrested the defendant and charged him with child abduction as defined in section 10—5(b)(10) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)). That section provides that a person commits child abduction when he or she "[i]ntentionally lures or attempts to lure a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child for other than a lawful purpose." The evidence presented to the grand jury indicated that on five consecutive days in May 1988, the defendant slowly drove his car past a 12-year-old girl as she walked home from school. On each occasion, the defendant allegedly attempted to engage the girl in conversation. On one occasion, the defendant allegedly asked the girl her name and said to her, "come on." The indictment basically tracks the language of section 10—5(b)(10), charging that the defendant attempted to lure the girl into his car without the consent of her parent or lawful guardian "for other than a lawful purpose." The indictment does not specify any particular unlawful purpose harbored by the defendant at the time he allegedly attempted to lure the girl into his car.

The defendant argues that the phrase "for other than a lawful purpose" is unconstitutionally vague and overbroad, and that enforcement of section 10—5(b)(10) impermissibly restricts the defendant's freedom of speech and association protected by the first and fourteenth amendments to the United States Constitution. We disagree.

The due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) require that the proscription of a crimi-

nal statute be clearly defined and provide " ' "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." ' " (*People v. Jihan* (1989), 127 Ill. 2d 379, 385, quoting *People v. Haywood* (1987), 118 Ill. 2d 263, 269, quoting *United States v. Petrillo* (1946), 332 U.S. 1, 8, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1542.) "Definiteness is necessary so that 'the person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " (*People v. Jihan* (1989), 127 Ill. 2d 379, 385, quoting *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99.) Definiteness is also required "to avoid arbitrary and discriminatory enforcement and application by police officers, judges and juries." (*People v. Haywood* (1987), 118 Ill. 2d 263, 269.) The United States Supreme Court has also observed that "where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" *** than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. City of Rockford* (1972), 408 U.S. 104, 109, 33 L. Ed. 2d 222, 228, 92 S. Ct. 2294, 2299, quoting *Cramp v. Board of Public Instruction* (1961), 368 U.S. 278, 287, 7 L. Ed. 2d 285, 292, 82 S. Ct. 275, 280, and *Baggett v. Bullitt* (1964), 377 U.S. 360, 372, 12 L. Ed. 2d 377, 385, 84 S. Ct. 1316, 1322. See also *People v. Bossie* (1985), 108 Ill. 2d 236, 240-41.

The defendant first attacks section 10—5(b)(10) on its face, arguing that the phrase "for other than a lawful purpose" is impermissibly vague because it is nowhere defined in the Criminal Code and because "people of ordinary intelligence have no way of ascertaining what breach of criminal, civil, or municipal law may subject

them to arrest and prosecution" under this section. The defendant argues that section 10—5(b)(10) encompasses a wide variety of conduct which may constitute only a misdemeanor or which may be "unlawful" only in a civil or administrative sense, and thereby transforms such conduct into a Class 4 felony. (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(d).) The defendant contends that the potential sweep of section 10—5(b)(10) thus constitutes an unwarranted intrusion into the first amendment freedoms of speech and association.

The defendant relies primarily on the decision in *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, *rev'd on other grounds, Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758, in which a United States district court held unconstitutional that portion of the Illinois "mob action" law which makes unlawful "[t]he assembly of 2 or more persons to do an unlawful act" (Ill. Rev. Stat. 1987, ch. 38, par. 25—1(a)(2)). The court, in *Landry*, reasoned that the phrase "unlawful act" is impermissibly vague because the phrase "in its normal meaning *** includes city regulatory ordinances, *** torts, or other civil wrongs. This implies protection of other state interests which are not readily apparent, and which may not justify suppression of speech or assembly. *** Men of ordinary intelligence have no way of ascertaining what breach of criminal or civil law may subject them to arrest and prosecution." *Landry*, 280 F. Supp. at 955.

We note parenthetically that the *Landry* court placed its own construction on the phrase "unlawful act" in the absence of an interpretation by the Illinois courts. We further find that the phrase "other than a lawful purpose," as used in section 10—5(b)(10) of our child abduction statute, does not fail "to give adequate notice as to what action or conduct will subject one to criminal penalties" (*People v. Vandiver* (1971), 51 Ill. 2d 525, 530), nor

is the phrase so obscure that people "of common intelligence must necessarily guess at its meaning and differ as to its applicability." (*People v. Rogers* (1989), 133 Ill. 2d 1, 15, quoting *People v. Dednam* (1973), 55 Ill. 2d 565, 568. See also *State v. Smith* (1988), 111 Wash. 2d 1, 759 P.2d 372 (recognizing that the concept of "lawfulness" is not inherently unconstitutionally vague); *City of Lewiston v. Frary* (Idaho 1966), 420 P.2d 805 (recognizing that the term "unlawful purpose" is not inherently unconstitutionally vague).) Given its ordinary meaning, the phrase "other than a lawful purpose" means any purpose which is unlawful. In *People v. Rogers* (1989), 133 Ill. 2d at 15, this court stated that "other than a lawful purpose" implies actions which violate our Criminal Code. We do not think that "other than a lawful purpose" can reasonably be said to involve violations of administrative regulations or city ordinances, as defendant suggests. (See *City of Chicago v. Wisniewski* (1973), 54 Ill. 2d 149; *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399.) Courts in other States have construed similar language as involving violations of criminal laws. (See, e.g., *Mixon v. State* (1970), 226 Ga. 869, 178 S.E.2d 189; *State v. Albers* (N.H. 1973), 303 A.2d 197; *State v. Truby* (1947), 211 La. 178, 29 So. 2d 758.) These cases held that the use of such language did not render the statute unconstitutionally vague. We must therefore reject the defendant's contention that the phrase "other than a lawful purpose" as used in the child abduction statute is unconstitutionally vague on its face, and sweeps within its meaning a myriad of noncriminal activities.

In *Landry*, which case defendant relies on and which we discussed above, the district court was concerned not only with a broad application of the statute to conduct, but also with its effect on the first amendment rights of speech and association. It was in this context that the

phrase "unlawful act" was held to be vague and the statute thus overbroad. However, *Landry* was decided before the Supreme Court's decisions in *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908, and *New York v. Ferber* (1982), 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348, which cases require a "substantial" overbreadth before a statute which reflects legitimate State interests is rendered unconstitutional. We think these cases reduce the precedential value of *Landry.* (See *People v. Holder* (1983), 96 Ill. 2d 444, 450-54.) The State has a strong interest in protecting its children from abduction in the manner proscribed by the statute in question, and the consequences thereof. We find that the rationale of the *Broadrick* Court as to overbreadth applies equally well to its companion evil, in a constitutional sense, vagueness. In light of the strong State interest involved and the limiting construction that past decisions of this court placed on the language of the statute, we find that the act is not unconstitutionally vague.

The defendant next argues that section 10—5(b)(10) is unconstitutional as applied in this case because enforcement of the statute here unduly interferes with the defendant's freedoms of speech and association protected by the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV). The defendant asserts that he is in essence being prosecuted for engaging in "pure speech," and that the State proceedings against him must satisfy the strict and usually fatal level of constitutional scrutiny applicable to State actions impinging fundamental personal rights. (See *Hynes v. Mayor & Council* (1976), 425 U.S. 610, 48 L. Ed. 2d 243, 96 S. Ct. 1755; *Dunn v. Blumstein* (1972), 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995.) We, however, reject the defendant's contention that first

amendment rights are implicated by the enforcement of this statute.

It is apparent that the defendant, by this argument, is attempting to bring the case within the distinction between conduct and speech alluded to in *Broadrick*. However, as noted in the opinion of this court in *Holder*, the Supreme Court, in *New York v. Ferber*, applied the substantial overbreadth construction beyond pure conduct. It applied it to the production and distribution of materials protected by the first amendment. The Court held that this application was appropriate in view of the serious problem involving the "exploitive use of children in the production of pornography." (*New York v. Ferber* (1982), 458 U.S. 747, 749, 73 L. Ed. 2d 1113, 1117, 102 S. Ct. 3348, 3350.) Since, as noted below, we find no first amendment involvement in this case, we need not further discuss the extent of the sweep of these two Supreme Court decisions as they relate to first amendment rights.

Activities which the State may otherwise validly proscribe are not drawn within the protection of the first amendment merely by virtue of the fact that some or all of their elements are verbal in nature. (See *Giboney v. Empire Storage & Ice Co.* (1949), 336 U.S. 490, 498, 93 L. Ed. 834, 841, 69 S. Ct. 684, 688-89; *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 552-53.) As the court stated in *United States v. Marchetti* (4th Cir. 1972), 466 F.2d 1309, 1314, "Threats and bribes are not protected simply because they are written or spoken; extortion is a crime although it is verbal." In *United States v. Quinn* (5th Cir. 1975), 514 F.2d 1250, 1268, the court observed that "[e]xtortionate speech has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money, which is no protection at all." See also *People v. Blackwood* (1985), 131 Ill. App. 3d 1018 (threats and harass-

ment unprotected by first amendment); *People v. Lewis* (1980), 84 Ill. App. 3d 556 (criminal solicitation unprotected); *People v. Johnson* (1978), 60 Ill. App. 3d 183 (first amendment freedom of association not implicated in prosecution for prostitution).

Similarly, in the case at bar, we conclude that the luring or attempted luring of a child into an automobile for a criminal purpose is in no way protected by the first amendment. It is unquestioned that the State has a substantial interest in the protection of its children, and may validly proscribe the luring or attempted luring of children into motor vehicles for criminal purposes, although that attempt may involve speech. Once a child is taken into a vehicle and whisked away by a person harboring a criminal motive, it becomes exceedingly difficult, if not impossible, for law enforcement personnel to intervene for the protection of the child. The State undoubtedly has broad powers to avert such potentially dangerous situations. We simply find untenable the proposition that the State may not enforce the proscription contained in section 10—5(b)(10) of the child abduction statute whenever words are used as the means of luring or attempting to lure a child into a motor vehicle.

For the foregoing reasons, the decision of the circuit court is reversed and this cause is remanded to the circuit court of McLean County.

*Reversed and remanded.*