THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL S. JOYCE, Defendant-Appellant.

Second District No. 2—89—0139

Opinion filed March 28, 1991.—Rehearing denied May 6, 1991.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Eleesha Pastor O'Neill, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Michael Joyce, appeals from his child abduction conviction (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)). He raises six issues which can be summarized as follows: (1) whether section 10—5(b)(10) of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1987,

ch. 38, par. 10—5(b)(10)) is unconstitutionally vague; (2) whether the indictment insufficiently set out the nature and elements of the offense; (3) whether the jury instructions conveyed an unconstitutional presumption; (4) whether the jury instructions were deficient since they did not define the statutory language of "other than a lawful purpose"; (5) whether the defendant was proved guilty beyond a reasonable doubt; and (6) whether the defendant was denied a fair trial by the introduction of evidence that he exercised his constitutional rights during interrogation. We reverse and remand.

On February 16, 1988, a Kane County grand jury indicted the defendant on one count of child abduction (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)). A later amended indictment alleged that on January 14, 1988, the defendant intentionally attempted to lure M.W., a child under age 16, into a motor vehicle for other than a lawful purpose and without the consent of a parent.

The defendant sought a bill of particulars to specify both the manner of the alleged attempt to lure M.W. into a motor vehicle and the unlawful purpose that the defendant allegedly harbored at the time. The trial court ordered the State to amend its indictment to include the possible unlawful purposes harbored by the defendant. The State supplemented its indictment by adding a list of 29 possible "unlawful purposes" which included homicide, kidnapping, sexual assault, tattooing the body of a minor, and violation of bail bond.

The defendant then moved to dismiss the indictment, alleging, *inter alia*, that section 10—5(b)(10) of the Code is vague, overly broad, and unenforceable and that, by creating an improper presumption, section 10—5(b)(10) shifts the burden of proof to the defendant to prove a lawful intent or innocence. On June 9, 1988, the trial court denied the motion, finding that section 10—5(b)(10) was not unconstitutionally vague or overly broad and that it did not shift the burden of proof to the defendant.

The defendant again moved to dismiss the indictment. He sought reconsideration of the trial court's denial of his June 9 motion. He additionally argued that section 10—5(b)(10) of the Code improperly combines choate and inchoate offenses since, in contradiction of the attempt statute (Ill. Rev. Stat. 1987, ch. 38, par. 8—4), luring and attempting to lure a child are treated the same. The trial court denied both reconsideration of its June 9 order and the new motion to dismiss.

Before trial, the defendant moved *in limine* to prevent the State from introducing evidence that the defendant chose to exercise his

constitutional rights after being given *Miranda* warnings at the time of his arrest. The trial court granted this motion.

On October 24, 1988, the cause proceeded to trial. The State called M.W., M.W.'s aunt D.K., M.W.'s mother D.W., and four Batavia police officers to testify. The defense did not present any evidence.

The following testimony was elicited during trial. M.W. was born on March 20, 1975. In January 1988, she was living with her aunt in Batavia. On January 14, neither her aunt nor her mother gave the defendant permission to ask M.W. into a car or to give her a ride home from school.

On January 14, M.W. left Batavia Junior High School at 2:50 p.m. and walked home alone. While she was walking, a light blue pickup truck passed her heading in the opposite direction. The driver honked his horn and waved. M.W. waved back, thinking he was someone she knew. She noticed the truck turn around to head in her direction.

As M.W. tried to cross a street, the truck turned to block her from crossing. The driver rolled down his window and asked M.W. if she wanted a ride home. M.W. told him, "[n]o," and kept walking. The driver asked her name, and she replied, "Sarah." He then stated, "Sarah, get into the truck. I don't bite, and I will give you a ride home." M.W. again said, "No." She then walked behind the truck to get the license number. Once M.W. walked behind the truck, the driver turned the corner and left. M.W. reported the incident to the police and gave them a description of the truck, its driver, and the license plate number.

On January 15, 1988, Batavia police sergeant Donald Hubbard was on patrol. He noticed a light blue pickup truck pass his squad car. The truck description and the license plate number matched the one in a police report that Sergeant Hubbard had read. He stopped the truck, which was driven by the defendant.

Sergeant Hubbard told the defendant that he had been stopped because he and his truck matched the descriptions from an "attempted child pick up." Hubbard testified that the defendant then stated, "It doesn't surprise me that I would be accused of this." The defendant denied that he had been involved in the attempted "pickup" but that he may have stopped to ask someone for directions. Hubbard arrested the defendant for "attempted child abduction."

At Hubbard's request, the defendant followed him to the police station. The defendant received *Miranda* warnings and was questioned by investigators John Albertson and Fred Buss. Buss testified that he told the defendant that there was no doubt that he had done what the victim had claimed he had done. The defendant initially re-

plied that he did not feel that he could talk about it since he had "a lot of problems" in his life. From the defendant's statements, Buss opined that the defendant's unlawful purpose in "luring" M.W. to his truck was for "[s]exual purposes."

Later on January 15, M.W. came to the Batavia police station. Investigator Albertson showed her six photographs, one being the defendant's photograph. M.W. selected the defendant's photograph as that of the person who had told her to get in his truck on the previous day. She also identified the defendant at trial.

After the photographic identification, Albertson spoke with the defendant in the booking area. He informed the defendant of the charge against him. The defendant asked him if his court-appointed attorney would arrive soon. Albertson replied, "no," but further told him, "[i]f you wish to make a call to a lawyer of your choice, I will provide you with a phone, but if you want a Court appointed lawyer, you will have to make that request to a Judge at bond call."

The defendant told Albertson that he was not trying to be uncooperative, but that he felt that he should talk to an attorney. Albertson then advised the defendant that he would not be asking the defendant any further questions since he had requested an attorney. Approximately one minute later, the defendant said, "Well, this is what I was going to tell my lawyer anyway." He then made the following statement. On January 14, he was driving in his truck, which he described as having a "funny" horn which "goes off by accident often when he touches it." While he was driving, he saw a girl on the sidewalk. He could not tell how old she was because of her winter clothing. He "accidentally" sounded his horn and the girl waved at him. He turned his truck around and pulled up alongside her. He spoke to the girl, but did not remember whether she responded. She hesitated for a "couple of seconds" and then walked away from the truck.

The defendant told Albertson that he was "not trying to pick the girl up" and that "[i]t would not have done" him "any good" since he was impotent. After that, the defendant made no further statements which pertained to this case.

On cross-examination, Albertson admitted that he was not able to uncover any evidence that the defendant attempted to commit a sexual assault on M.W. The State rested after his testimony.

The defense did not present any testimony. After the instruction conference, the defendant moved for a directed verdict which the trial court denied.

The State's proffered instructions defined the offense of child abduction under section 10—5(b)(10) and defined "prima facie" evidence.

The trial court, over the defendant's objection, gave the proffered jury instructions.

The jury returned a guilty verdict on the child abduction charge. Judge McCarthy entered judgment on the verdict. On December 1, 1988, the date that the trial court had scheduled for the defendant's sentencing, the defense counsel orally moved for a new trial. The trial court denied the oral motion, but granted the defendant an extension of time to file a written motion. The trial court sentenced the defendant to two years' probation. Judge McCarthy retired from the bench shortly thereafter.

On December 14, 1988, the defendant filed his written motion for a new trial. The State indicated that it had no objection to the written motion. Judge DiMarzio, the judge who had taken Judge McCarthy's trial call, noted that Judge McCarthy had ruled on the motion when it was presented orally and denied relief. This appeal followed.

■ The first issue on appeal is whether section 10—5(b)(10), forbidding the luring or the attempting to lure a child "for other than a lawful purpose," is unconstitutionally vague and indefinite. Section 10—5(b)(10) provides:

"(b) A person commits child abduction when he or she:

* * *

(10) Intentionally lures or attempts to lure a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child for other than a lawful purpose.

For the purposes of this subsection (b), paragraph (10), the luring or attempted luring of a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose." Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10).

Recently, our supreme court rejected an argument similar to the one the defendant raises here. In *People v. Williams* (1990), 133 Ill. 2d 449, the trial court dismissed the defendant's indictment, finding section 10—5(b)(10) impermissibly vague. (133 Ill. 2d at 450.) As in this case, the defendant in *Williams* first argued that the phrase "for other than a lawful purpose" was impermissibly vague because it is not defined in the Code. (133 Ill. 2d at 452-53.) Our supreme court found that the phrase was not impermissibly vague and stated that "[g]iven its ordinary meaning, the phrase 'other than a lawful purpose' means any purpose which is unlawful." (133 Ill. 2d at 454.) The court further stated, "It is unquestioned that the State has a substantial interest in the protection of its children, and may validly proscribe

the luring or attempted luring of children into motor vehicles for criminal purposes ***." 133 Ill. 2d at 457.

■■ The defendant argues that the *Williams* court did not consider his argument that the phrase, "other than a lawful purpose," which applies to the act of luring or attempting to lure a child into a vehicle, "is not the most definite *actus reus* for a crime." The defendant points to section 10—5(c)(4) of the Code, which in pertinent part provides:

"It shall be an affirmative defense that:

\* \* \*

(4) The person lured or attempted to lure a child under the age of 16 into a motor vehicle *for a lawful purpose* in prosecutions under subsection (b), paragraph (10)." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 10—5(c)(4).

The defendant argues that the phrase "for a lawful purpose" still remains undefined, since the phrase "for a lawful purpose" was not defined in the *Williams* case. He argues that without such a definition, the State cannot prove the necessary intent to invoke the affirmative defense. However, as the *Williams* court found the ordinary meaning of the phrase, "other than a lawful purpose," to refer to any unlawful purpose (see 133 Ill. 2d at 454), we find that the ordinary meaning of the phrase, "for a lawful purpose," refers to any purpose that is lawful.

■■ The defendant then argues that the *Williams* court "did not give its narrowing construction to the element of unlawful purpose until after the defendant was tried and convicted." The defendant contends that the trial court and the jury were not given the benefit of that narrowed construction in deciding whether he acted in a manner "other than a lawful purpose."

We note that the *Williams* court gave the phrase, "other than a lawful purpose," its "ordinary meaning." (133 Ill. 2d at 454.) We find that the jury would have applied the same "ordinary meaning" to the phrase "other than a lawful purpose" in determining the defendant's guilt. See *Williams*, 133 Ill. 2d at 454.

The second issue on appeal is whether the trial court erred in failing to dismiss the indictment. The defendant argues that although the indictment tracks the language of section 10—5(b)(10), the offense is one which requires greater specificity in the charge.

■■ ■ When reviewing the sufficiency of a charging instrument which has been challenged, the court must determine whether the complaint or information comports with the statutory requirements that the charge be in writing and that it state the name of the of-

fense, the statutory provision alleged to have been violated, and the nature and elements of the offense pursuant to the Code. (Ill. Rev. Stat. 1987, ch. 38, par. 111—3(a); *People v. Pisani* (1989), 180 Ill. App. 3d 812, 815.) The statute's language can serve to apprise a defendant of both the nature and the elements of the offense, so long as the statutory language specifies, with reasonable certainty, the type of conduct being alleged. (*People v. Clay* (1988), 167 Ill. App. 3d 628, 634.) Section 111—3(a) requires:

"A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitely as can be done; and

(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." Ill. Rev. Stat. 1987, ch. 38, par. 111—3(a).

The indictment here initially tracked the statutory language of section 10—5(b)(10). After the trial court granted the defendant's bill of particulars, the State amended its indictment to include 29 possible "unlawful purposes." The defendant, however, argues that this case presents a situation where a charge which tracks the statutory language of the offense is insufficient to apprise the defendant of the offense.

■■ We note that in *Williams* the defendant's indictment tracked the language of section 10—5(b)(10), charging that the defendant attempted to lure a child under the age of 16 into his car without the consent of her parent or legal guardian "for other than a lawful purpose." The indictment did not specify any particular unlawful purpose harbored by the defendant at the time he allegedly attempted to lure the child into his car. (133 Ill. 2d at 451.) The conduct of the State in filing its response to the defendant's request for a bill of particulars was inappropriate. Such overly broad and cavalier conduct is not approved by this court. However, the indictment that the supreme court approved in *Williams* was no more specific than the one here. We therefore find that the defendant was sufficiently apprised of both the nature and the elements of the offense. See *Williams*, 133 Ill. 2d at 454.

The third issue on appeal regards the jury instructions on *prima facie* evidence. Those instructions allowed the jury to find that the defendant acted with other than a lawful purpose if it found the other elements of section 10—5(b)(10) to be proved. The defendant argues that these instructions denied him due process of law by creating either an unconstitutional mandatory rebuttable presumption or a permissive inference which alone would be insufficient to establish the element of unlawful purpose.

 Evidentiary devices known as presumptions are categorized into two groups, mandatory and permissive. (*People v. Hester* (1989), 131 Ill. 2d 91, 99.) A mandatory presumption is one that the fact finder is not free to reject. The trier of fact must find the presumed elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. (*County Court v. Allen* (1979), 442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 99 S. Ct. 2213, 2225; *People v. Haas* (1990), 203 Ill. App. 3d 779, 793-94.) A permissive presumption leaves the trier of fact free to accept or reject the connection between the presumed fact and the basic fact. (*County Court*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2224-25.) In criminal cases, the ultimate test of any presumption's constitutional validity remains constant: the presumption must not undermine the fact finder's responsibility at trial to find the ultimate facts beyond a reasonable doubt, based on evidence adduced by the State. (*County Court*, 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224.) To determine whether a presumption contained in a jury instruction is mandatory or permissive, a court must examine the words contained in the jury instruction. *Hester*, 131 Ill. 2d at 100.

In this case, the questioned jury instructions included the following:

"A person commits the offense of Child Abduction when he intentionally attempts to lure a child under the age of sixteen into a motor vehicle, for other than a lawful purpose, without the consent of the parent of the child.

\* \* \*

To sustain the charge of Child Abduction, the State must prove the following propositions:

First: That the defendant intentionally attempted to lure [M.W.] into a motor vehicle;

Second: That the defendant did so without the consent of the parent of [M.W.];

Third: That the defendant did so for other than a lawful purpose;

Fourth: That [M.W.] was under the age of sixteen at the time of the incident.

If you find from your consideration of all the evidence that each one of the propositions has been proved beyond a reasonable doubt you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of the propositions has not been proved beyond a reasonable doubt you should find the defendant not guilty. [(People's Instruction 10.)]

\* \* \*

Prima facie evidence means such evidence as is sufficient to establish a given fact. [(People's Instruction 13.)]

\* \* \*

The attempted luring of a child under the age of sixteen into a motor vehicle without the consent of the parent may be prima facie evidence of other than a lawful purpose. You are never required to find prima facie evidence. In determining whether or not the defendant's purpose was other than lawful, you may take into consideration any other evidence presented in the case." People's Instruction 12.

■■■ The problem with these instructions is the definition of "prima facie evidence." *Prima facie* evidence is such evidence which may be rebutted by competent evidence. (*People v. Embry* (1988), 177 Ill. App. 3d 96, 100-01, citing *Morrison v. Flowers* (1923), 308 Ill. 189, 195.) We find that by failing to instruct the jurors that *prima facie* evidence may be rebutted or contradicted, the trial court created a mandatory presumption. (See *County Court*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2225.) The instructions, as worded, undermine the jury's responsibility to find the ultimate facts of the defendant's guilt beyond a reasonable doubt, based on the evidence that the State presented. (See *Hester*, 131 Ill. 2d at 100.) The trial court has thus denied the defendant his due process rights, and we must reverse the judgment and remand the cause for a new trial. In deciding to remand, we make the necessary determination that the defendant was proved guilty beyond a reasonable doubt so that his retrial will not present the risk of a double jeopardy violation. (See *People v. Taylor* (1979), 76 Ill. 2d 289.) That determination, which we make without unnecessarily protracted comment, follows from our obligation on review to consider the evidence in the light most favorable to the prosecution. See *People v. Collins* (1985), 106 Ill. 2d 237.

Although we need not address the remaining issues on appeal, we note that, upon remand, the same issues will arise. We therefore choose to address them. The defendant's fourth issue on appeal is whether he was denied a fair trial since the jury instructions did not define "for other than a lawful purpose."

The defendant analogizes the offense of section 10—5(b)(10) to a burglary offense. Burglary occurs when one enters a building or other structure "with intent to commit therein a felony or theft" (Ill. Rev. Stat. 1987, ch. 38, par. 19—1). The Illinois Pattern Jury Instructions for the offense require mention of a "felony or theft" that the defendant intended to commit. (Illinois Pattern Jury Instructions, Criminal, Nos. 14.05, 14.06 (2d ed. 1981).) He argues, by analogy, that the instructions here should have specified the particular offense that was the defendant's unlawful purpose.

As the State points out, the offense of burglary is different from this offense since the burglary statute requires a felonious intent, *i.e.*, the intent to commit a misdemeanor would not sustain a conviction of burglary. (See *People v. Palmer* (1980), 83 Ill. App. 3d 732, 737.) However, section 10—5(b)(10) merely requires the intent to lure a child under the age of 16 into a motor vehicle for any unlawful purpose. (See Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10).) That phrase is not so obscure that people of "common intelligence must necessarily guess at its meaning and differ as to its applicability." (*Williams*, 133 Ill. 2d at 454.) There is no need to determine whether the intent is felonious. We find that the giving of that instruction did not deny the defendant a fair trial.

The defendant, in his final issue on appeal, asserts prejudicial error in Investigator Buss' observation that the defendant had asserted his right to silence and in Investigator Albertson's testimony that the defendant had asserted his right to counsel. We find, as the defendant argues, that the challenged comments were covered by the court's motion *in limine* precluding certain testimony. We further find that the challenged statements were inadmissible since they were neither material nor relevant. (See *People v. McMullin* (1985), 138 Ill. App. 3d 872, 877.) The testimony was improperly allowed.

The decision of the circuit court of Kane County is reversed and the cause remanded for a new trial.

Reversed and remanded.

BOWMAN and McLAREN, JJ., concur.