THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEOVANNY TIRADO, Defendant-Appellant.

First District (3rd Division)   No. 1—92—2101

Opinion filed September 15, 1993.

Whitcup & Arce, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth McCurry, and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Geovanny Tirado appeals his conviction of child abduction and his sentence of three years' imprisonment.

On appeal defendant advances six issues as to whether the trial judge properly: (1) responded to a question posed by the jury during its deliberations inquiring as to the language defendant had spoken at the pretrial hearing; (2) denied defendant's motion to suppress the victim's identification of him where such identification was allegedly based on a suggestive one-person showup; (3) failed to declare a mistrial by reason of a *Batson* violation; (4) gave jury instructions which

deprived defendant of the presumption of innocence and amounted to a directed verdict of guilty; (5) failed to find the child abduction statute unconstitutional; and (6) made a statement at the sentencing hearing speculating as to what would have happened had the victim entered defendant's vehicle. Lastly, defendant asserts that he was not found guilty beyond a reasonable doubt.

We affirm defendant's conviction and sentence.

Defendant was charged with attempting to lure Crystal Hale, a minor, into his car on March 12, 1991, without the consent of her parent for other than a lawful purpose in violation of the child abduction statute. (Ill. Rev. Stat. 1991, ch. 38, par. 10—5(b)(10).) Crystal was 8 years and 11 months old at the time of the incident.

On September 25, 1991, a hearing was held on defendant's motion to suppress the lineup and eyewitness identification. At the beginning of this pretrial hearing, the State asked the court to first ascertain whether defendant spoke English. The trial judge questioned defendant and then stated "just for the record, this guy [defendant] can speak English better than I can." Notwithstanding this finding, the court agreed to use an interpreter.

At the pretrial hearing, the events of March 12, 1991, were recounted through the testimony of defendant and a police officer (Ann Sullivan). Officer Sullivan testified that she had arrived early at the police station for her 3 p.m. shift and was standing at the desk when Crystal "came in screaming that a man had been following her home" from school. Sullivan agreed that Crystal was hysterical. Crystal described the man as Hispanic and wearing ladies' sunglasses and a coat with "curly-like" fur on it. Crystal also said that he had a "light baby blue car." The police then broadcasted the descriptions.

Approximately the same time that Crystal was in the police station making a report, defendant was driving a compact blue car, was wearing sunglasses and a jacket with a "furry type of collar," and was stopped by the police for a traffic violation about 4½ blocks from the police station. Defendant was handcuffed and taken to the police station in a squad car. When they arrived in the garage of the police station, Officer Sullivan was with Crystal in the police garage and Crystal ran to the squad car saying that the man in the squad car (defendant) was "the one." Crystal also identified the small blue car driven by defendant when the car was brought to the police station.

Defendant testified that he told the police he did not know and had never seen Crystal before. The police then interrogated defendant.

The trial court denied defendant's motion to suppress the lineup and eyewitness identification.

At trial, Crystal testified that on March 12 she was walking home alone from Chappell School when she saw defendant waiting by the curb outside the school. Crystal testified that defendant "asked me to get in the car. I said no; and I ran away, and he chased me in the car." Defendant also said "I'll give you candy and money." Crystal ran to the police station and told the police that "a guy was chasing me in a baby blue car." Crystal described the man as "wearing a black and white coat with a fuzzy white collar" and glasses "[l]ike a lady would wear." When presented with the State's exhibits, Crystal identified defendant's jacket, glasses, and a picture of the car defendant was driving on the day of the incident.

Crystal testified that defendant spoke to her in Spanish and she understood the words "money" and "candy."

Crystal further testified that she went to the back of the police station with Officer Sullivan and identified defendant when he arrived at the police station in a squad car. Crystal also identified the car when the police took her to the street where the police had left the car after taking defendant into custody.

Crystal remembered having five similar encounters with defendant at the school prior to March 12. The first time Crystal saw defendant was about a week before March 12 at the school, and on that first occasion, defendant did not say anything to her. The second encounter occurred the next day and at that time defendant asked Crystal to get in his car but Crystal said no. The third time, defendant again asked Crystal to get into his car, Crystal refused and ran away, and defendant chased her. On the fourth occasion, defendant told Crystal to get in his car and then, in English, said "I'm going to break down your door." Crystal did not remember what defendant said to her the fifth time she saw him. During one of these five prior encounters, defendant told Crystal "I'm going to kill your family." Crystal stated that on all five occasions, defendant was driving the same car and wearing the same jacket and sunglasses as on March 12. On all occasions, defendant was situated on the street directly in front of the school and on the same side of the street as Crystal.

Crystal testified that defendant spoke once in Spanish to her, never exited his car and never touched her. Crystal identified defendant while he was in the squad car at the police station, and she never saw him outside the police car or with handcuffs.

Robin Brewer, Crystal's mother, testified that she does not know defendant and never gave permission to defendant to talk to her

daughter, to offer her any candy or money, or to invite her into his car. Ms. Brewer further testified that approximately five days before March 12, the victim told her about defendant. At that time, Ms. Brewer instructed her daughter to leave school with friends instead of walking alone and if any further problems developed, to seek help from the police.

Police Captain John Manley testified that he was a watch commander at the police station where Crystal came on March 12. Manley was waiting to go on duty shortly before 3 p.m. when Crystal entered the police station "shouting that a man had been following her," described the man's car as a "baby blue four-door Japanese compact car," and pointed out the window at defendant. Crystal also described defendant as having dark hair, wearing ladies sunglasses and "wearing a black coat with gray in it and a white collar." After observing defendant out the window, Manley told Officer Sullivan to stay with Crystal, instructed the desk sergeant to broadcast over the police radio the information obtained from Crystal, got into his personal car which was parked immediately outside the door and followed the blue car.

While pursing the blue car, Manley observed the driver making motions as if he was taking off a coat. A marked patrol car with its lights and sirens on then began to chase the blue car, and when the patrol car caught the blue car, Manley radioed to the patrol car that the vehicle which they had stopped was the subject of the police message being broadcast about Crystal.

Police officer Charles Wickramasekera testified that he was one of the officers who stopped defendant for running through a red light, then received the police broadcast concerning the vehicle, took defendant into custody, and left the blue car at the scene of the stop. As they rode to the police station, Officer Wickramasekera read defendant his *Miranda* rights although defendant gave no response and did not indicate any type of recognition.

After transporting defendant to the police station, Officer Wickramasekera returned to the scene of the traffic stop with Crystal and Officer Shelia Klein. After Crystal identified the blue car, Officer Wickramasekera drove the blue car back to the police station.

After arriving back at the police station, Officer Wickramasekera again read the *Miranda* rights to defendant and also had Officer Santiago, who is fluent in the Spanish language, read the *Miranda* rights in Spanish to defendant. After Officer Santiago left the room, defendant initiated a conversation in English with Officer Wickramasekera. Defendant asked the officer why he was being detained. Officer Wick-

ramasekera responded that defendant should know why he was there and asked defendant what he thought he was doing. Defendant then said he had been in the country six months and "was a lonely guy; and all he wanted to do was talk to the girl."

Officer Wickramasekera further testified that he issued traffic citations to defendant and recovered the jacket and sunglasses belonging to defendant from the passenger's front seat. Officer Wickramasekera also testified that defendant volunteered the name of Freddie Merchan as the owner of the car and did so in English.

Officer Santiago testified that he gave the *Miranda* warnings in Spanish to defendant and that defendant responded to him in Spanish.

Officer Shelia Klein testified that she was the partner of Officer Ann Sullivan on March 12, 1991, and she was with Officer Sullivan and Crystal in the police parking garage when Crystal identified defendant as he arrived in a squad car. Officer Klein further testified that when Officer Wickramasekera arrived at the police station in the blue car, Crystal identified the jacket inside the car as the one worn by defendant.

Officer Carl Kurth testified that he interviewed defendant about 7 p.m. on the evening of defendant's arrest. Officer Kurth advised defendant of his *Miranda* rights in English and defendant stated in English that he understood. The entire conversation between Officer Kurth and defendant was in English. Defendant denied being around the school and having any involvement with Crystal. When questioned by Officer Kurth about making a statement to Officer Wickramasekera that he was just a lonely guy and wanted the girl to talk to him, defendant initially denied and then admitted making the statement.

Lupe Chico, defendant's mother, testified that on March 12 defendant was living with friends and came to visit her about noon for 45 minutes. Defendant was then wearing a black jacket with a white collar. Mrs. Chico sometimes saw defendant wear the sunglasses but never saw him in the blue car.

Freddie Merchan testified that he owned the blue car, a 1991 Nissan Sentra, and that defendant was living with him at the time of the incident. The only day Merchan loaned his car to defendant was on March 12 so that defendant could inquire about a job.

Defendant testified that he borrowed Merchan's car on only one occasion, *i.e.*, March 12, 1991, to go to a job interview scheduled for 3 or 3:30 in the afternoon but he never made it to the interview because the police arrested him. On March 12 defendant was wearing the sunglasses and the black jacket with a white collar which were presented

into evidence. On his way to the interview, defendant passed the Chappell School. The police gave him a ticket for going through a red light and for not having a driver's license.

Defendant understood the *Miranda* rights read to him in Spanish by Officer Santiago on the day of his arrest. Defendant testified that Detective Kurth asked him questions in English and he answered in Spanish.

After the State read the questions posed by the trial judge and the answers given by defendant from the transcript of the September 25, 1991, pretrial hearing, defendant testified that he did not remember the questions and answers given at the pretrial hearing.

Defendant denied being around the Chappell School on March 5 and denied seeing or talking to Crystal on March 6. Defendant also denied that he parked outside the school on March 7, 8, and 11. Defendant testified that the first time he saw Crystal was at the police station on March 12 and at that time defendant was wearing the black jacket. Defendant denied ever saying "I'm going to kill your family" or that he was a lonely guy and only wanted to talk to the girl.

The jury convicted defendant of child abduction and the court thereafter imposed a three-year sentence.

On appeal defendant first asserts that the trial judge committed reversible error by responding to a jury question during its deliberations regarding defendant's ability to understand and communicate in English.

The State advances four alternative responses to this issue: (1) defendant waived this issue by failing to include it in his post-trial motion; (2) the record does not reflect any actual communication between the trial judge and the jury and thus no error is demonstrated for this court to consider; (3) the trial court was within its discretion in responding to the jury's question; and (4) any error was harmless due to the overwhelming nature of the evidence.

The record reveals that the trial judge informed the parties' attorneys, outside the presence of the jury, that the jury sent the following question to the judge:

"Clarification of questions and answers. When State brought up the previous court appearance in September of '91, were the questions asked in English or Spanish; and were the answers given in Spanish or English by defendant? Can we get a copy of the stipulation, or can someone come and explain it to us?"

The previous court appearance to which the jury's question refers occurred at the pretrial hearing where the trial judge questioned

defendant to determine whether he understood English and defendant appeared to understand English. Following defense counsel's objection, the trial judge stated that he was going to tell the jury that the exchange in the pretrial hearing was in English. However, as conceded by defendant, there is nothing in the record to support the contention that this communication between the trial judge and the jury actually occurred.

It is well established that to preserve an issue for review, a proper objection must be made at trial and in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The plain error exception to the waiver rule applies only when the error is so prejudicial that the defendant is deprived of a fair trial. *Enoch*, 122 Ill. 2d at 190; see also *People v. Reid* (1990), 136 Ill. 2d 27, 38, 554 N.E.2d 174; *People v. Nevitt* (1990), 135 Ill. 2d 423, 441, 553 N.E.2d 368.

█ Defendant's fluency in English was an important issue for the jury to consider since section 10–5(10) of the child abduction statute provides a defendant will be guilty of such crime where the defendant lures or attempts to lure a child. (Ill. Rev. Stat. 1991, ch. 38, par. 10–5(b)(10).) Proof of such luring likely will include statements or communication from the defendant to his prey so that it may be an important factor as to the language spoken to convey the defendant's desire to induce the complaining witness to enter his car. Defendant's understanding of English would affect such ability.

However, absent a sufficient record demonstrating the alleged error, a "reviewing court must refrain from supposition" since it can only determine the issues before it solely on the basis of the record. *People v. Moore* (1991), 215 Ill. App. 3d 836, 848, 576 N.E.2d 900.

Defendant might have offered a bystander affidavit from court personnel or from any of the jurors or might have directly inquired of the court on the record to preserve the issue for purposes of appeal. Notably, at oral argument defendant admitted that he could not say with certainty whether or not the trial judge had engaged in the alleged communication with the jury.

Notwithstanding the lack of a factual basis in the record showing that the communication actually occurred, we add our strong disapproval of such conduct on the part of any trial judge since by such action he usurps the province of the jury and resolves what we may assume was an unresolved factual question.

Procedurally, a trial judge should communicate with a jury in open court with the parties present (*People v. Johnson* (1991), 146 Ill. 2d 109, 150, 585 N.E.2d 78) or through a written note delivered by the

bailiff, the jurors' custodian (*People v. Adams* (1967), 36 Ill. 2d 492, 224 N.E.2d 252; *People v. Madden* (1977), 52 Ill. App. 3d 951, 368 N.E.2d 384; *People v. Jones* (1976), 40 Ill. App. 3d 771, 353 N.E.2d 79). In the present case, the trial judge allegedly left the bench and indicated that he intended to go to the jury room to respond to the jurors' question.

As to the substance of a communication from judge to jury, the judge should attempt to clarify an issue for the jury when the jury raises an explicit question on a point of law arising from facts over which there is doubt or confusion. (*People v. Doe* (1988), 175 Ill. App. 3d 371, 529 N.E.2d 980.) However, a judge does not have the authority to answer a jury question which requires the court to make a conclusion based upon its evaluation of the evidence (*Doe*, 175 Ill. App. 3d at 376) or provide guidance to the jury to help it resolve a conflict in the evidence (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913). A trial judge must not abandon his role as a neutral referee or usurp the jury's function as trier of fact. *People v. Bell* (1983), 113 Ill. App. 3d 588, 447 N.E.2d 909.

In the present case, the jury's question involved a question of fact, not law. Conflicting testimony was given at trial as to whether defendant could speak or understand English. By telling the jury that defendant was conversant in English at the pretrial hearing, the judge might be resolving this evidentiary conflict and imprinting his stamp of approval on the State's position presented at trial. The question posed by the jury in this case should not have been answered substantively. However, the record does not disclose that the judge actually took such action.

■ Second, defendant contends that the identification of defendant by the victim at the police station was unduly suggestive. Defendant's post-trial motion makes no mention of this issue and thus it is waived. All of the evidence upon this issue, however, indicates the victim's identification was spontaneous and defendant's motion lacked any factual basis.

Third, defendant asserts that the exclusion of an Hispanic juror constituted a *Batson* violation.

■ Defendant has waived this issue not only by failing to mention it in his post-trial motion but also by failing to cite any authority to support his argument as required by Supreme Court Rule 341(e)(7). (134 Ill. 2d R. 341(e)(7).) Trial errors alleged on appeal are waived where the contentions are not supported by any citation to authority. *People v. Gibson* (1990), 136 Ill. 2d 362, 556 N.E.2d 226; *People v. Dinger* (1990), 136 Ill. 2d 248, 554 N.E.2d 1376; *People v. Felella*

(1989), 131 Ill. 2d 525, 546 N.E.2d 492; *People v. Salazar* (1991), 211 Ill. App. 3d 899, 570 N.E.2d 802.

Fourth, defendant asserts that the nonpattern instructions given to the jury deprived him of the presumption of innocence and amounted to a directed verdict of guilty.

■ Initially we note that pattern jury instructions do not currently exist for the offense of child abduction because of several recent statutory changes in the child abduction statute. (Illinois Pattern Jury Instructions, Criminal, No. 8.11 (2d ed. Supp. 1989).) However, a court is required to instruct the jury on all elements of the crime charged. *People v. Roberts* (1989), 182 Ill. App. 3d 313, 537 N.E.2d 1080.

The child abduction statute provides in pertinent part that a person commits the offense of child abduction when he attempts to lure a child under the age of 16 into a motor vehicle without the consent of the parent and that an attempted luring under these conditions "shall be prima facie evidence of other than a lawful purpose." Ill. Rev. Stat. 1991, ch. 38, par. 10—5(b)(10).

The challenged jury instructions provided as follows:

"A person commits the offense of child abduction when he intentionally attempts to lure a child under the age of sixteen into a motor vehicle, for other than a lawful purpose, without the consent of the parent of the child.

The attempted luring of a child under the age of sixteen into a motor vehicle without the consent of the parent of the child may be considered evidence of other than a lawful purpose."

Presumptions are evidentiary devices which are categorized into two groups, mandatory and permissive. *People v. Joyce* (1991), 210 Ill. App. 3d 1059, 569 N.E.2d 1189 (*Joyce* I), citing *People v. Hester* (1989), 131 Ill. 2d 91, 99, 544 N.E.2d 797.

A mandatory presumption is defined as "one where the fact finder is not free to reject the proffered presumption." (*Hester*, 131 Ill. 2d at 99.) A mandatory presumption in a criminal case is generally unconstitutional where it relieves the State of its burden of proof beyond a reasonable doubt and violates the due process clause by shifting the burden of persuasion to the criminal defendant. *People v. Joyce* (1992), 234 Ill. App. 3d 394, 410, 599 N.E.2d 547 (*Joyce* II).

On the other hand, a permissive presumption is defined as "one where the fact finder is free to accept or reject the suggested presumption." (*Hester*, 131 Ill. 2d at 99.) A permissive inference or pre-

sumption in a criminal case is generally permissible. *Joyce* II, 234 Ill. App. 3d at 410.

The language used in the instruction must be considered to determine whether a presumption contained in a jury instruction is mandatory or permissive. *Hester,* 131 Ill. 2d at 100.

The words "may presume" and "may infer" have been held to constitute a permissive presumption. (*People v. Housby* (1981), 84 Ill. 2d 415, 432-33, 420 N.E.2d 151; *People v. Elliott* (1986), 143 Ill. App. 3d 72, 77-80, 492 N.E.2d 946.) Similarly, the instructions challenged in the present case use the words "may be considered."

The parties direct our attention to two cases that have addressed nonpattern jury instructions on child abduction, *People v. Patten* (1992), 230 Ill. App. 3d 922, 595 N.E.2d 1141, and *People v. Marcotte* (1991), 217 Ill. App. 3d 797, 577 N.E.2d 799.

Defendant relies on *Marcotte,* where the fifth district found that the contested jury instructions created an improper mandatory inference. (*Marcotte,* 217 Ill. App. 3d at 798, 577 N.E.2d 799.) The jury instruction held improper in *Marcotte* stated as follows:

> "The attempted luring of a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child *shall be prima facie evidence of other than a lawful purpose.* (Emphasis added.) ***
> * * *
> *Prima Facie* evidence is evidence sufficient to establish a given fact *if not rebutted or contradicted.*" (Emphasis in original.) *Marcotte,* 217 Ill. App. 3d at 798-99.

The second district also addressed the following jury instructions for child abduction in *Joyce* I.

> "Prima facie evidence means such evidence as is sufficient to establish a given fact. ***
> ***
> The attempted luring of a child under the age of sixteen into a motor vehicle without the consent of the parent *may be prima facie evidence* of other than a lawful purpose. You are never required to find prima facie evidence. In determining whether or not the defendant's purpose was other than lawful, you may take into consideration any other evidence presented in the case." (Emphasis added.) *Joyce* I, 210 Ill. App. 3d at 1069.

The second district did not question the wording "may be *prima facie* evidence." Instead, the court found that the definition of *prima facie* evidence created a mandatory presumption by failing to state that

such evidence may be rebutted or contradicted. *Joyce* I, 210 Ill. App. 3d at 1069.

In contrast, the State relies on *Patten*, where this court upheld the jury instruction on child abduction, finding that it did not create a mandatory presumption and did not have the effect of shifting the burden of persuasion. (*Patten*, 230 Ill. App. 3d at 927-28.) The jury instruction which was held proper in *Patten* stated as follows:

> "If you find that at the time the defendant lured or attempted to lure a child under the age of sixteen years old into a motor vehicle and he did so without the consent of a parent or lawful custodian of the child, *you may infer* it was for other than a lawful purpose." (Emphasis added.) *Patten*, 230 Ill. App. 3d at 927.

The court in *Patten* also considered the fact that the jury was additionally instructed that a defendant is presumed innocent at every stage, which is not overcome unless from all the evidence it is convinced beyond a reasonable doubt that the defendant is guilty, and that the burden remains with the State throughout the case. *Patten*, 230 Ill. App. 3d at 927.

We find that the words "may be considered" employed in the present case are analogous to the "may infer" language accepted in *Patten* and the "may be *prima facie* evidence" wording implicitly approved in *Joyce* I. The "shall be *prima facie* evidence" wording rejected in *Marcotte* is clearly distinguishable from the present case. A jury instruction which includes the words "may infer" instead of "shall presume" generally avoids the suggestion of a mandatory presumption. (*Elliott*, 143 Ill. App. 3d at 77.) Furthermore, the instructions in the case at bar make no mention of *prima facie* evidence and thus do not raise the definitional problem which occurred in *Joyce* I. We believe that the jury instruction in the present case created a permissive presumption which the jurors could not view as an impermissible mandate but rather as an inference they were free to accept or reject.

Defendant next contends that the child abduction statute is unconstitutional because it denies defendant the presumption of innocence and requires him to actively proceed to rebut his presumed guilt in violation of his constitutional rights. Defendant maintains that the statutory scheme improperly excuses the State from proving the intent element of the offense, *i.e.*, "other than a lawful purpose," after a showing of the failure of consent by the parent or lawful custodian and shifts the burden of proof to the defendant to prove a lawful pur-

pose. Defendant also asserts that the statute is unconstitutional as applied in the present case.

The State asserts that the statute raises only a permissive inference which allows, but does not require, the trier of fact to infer the elemental fact of intent from proof of nonconsent, placing no burden of any kind on the defendant.

The child abduction statute provides:

"(b) A person commits child abduction when he or she:

\* \* \*

(10) Intentionally lures or attempts to lure a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child for other than a lawful purpose.

For the purposes of this subsection (b), paragraph (10), the luring or attempted luring of a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose." Ill. Rev. Stat. 1991, ch. 38, par. 10—5(b)(10).

The second, fourth and fifth districts, with which we agree, have found that the child abduction statute creates only a permissive inference. (*Joyce* II, 234 Ill. App. 3d 394, 599 N.E.2d 547 (2d Dist.); *Marcotte*, 217 Ill. App. 3d 797, 577 N.E.2d 799 (5th Dist.); *People v. Embry* (4th Dist. 1988), 177 Ill. App. 3d 96, 101, 531 N.E.2d 1130.

In *Embry*, the fourth district concluded that the defendant, who was convicted of child abduction in violation of section 10—5(b)(10) like the present defendant, had not established any constitutional infirmity in his conviction and found:

"In the instant case, the child abduction statute creates nothing more than a permissible inference. The statute speaks in terms of *prima facie* evidence and there is no restraint on the trier of fact's ability to accept or reject the inference. Therefore, the validity of the permissive presumption rests on an evaluation of the presumption as applied to the particular defendant on the record." *Embry*, 177 Ill. App. 3d at 101.

In *Marcotte*, the fifth district, after holding the jury instructions to be improper, similarly determined that the statute was not unconstitutional *per se* because it did not create a mandatory presumption or improperly shift any burden to the defendant. *Marcotte*, 217 Ill. App. 3d at 802.

In *Joyce* II, the court held that the following circumstances sufficiently corroborated the presumption that the defendant had an un-

lawful purpose: the defendant was a stranger, he repeated his offer of a ride, he fled the scene quickly, and a month later followed the victim. *Joyce II*, 234 Ill. App. 3d at 413.

■■ In the present case, the evidence reveals that defendant was a stranger to the victim and her mother, chased the victim when she refused his request to get into his car, had been involved in other similar encounters with the victim, attempted to entice the victim with offers of money and candy, and made threatening remarks to the victim. From our review of the record, we find that sufficient corroborating evidence of guilt was presented to support the presumed fact, *i.e.*, defendant's unlawful purpose.

Sixth, defendant asserts that the trial judge improperly considered what might have happened if the victim had entered defendant's car and therefore the sentence is excessive based on the prejudice in the judge's mind. Defendant bases this argument on the following statement made by the judge at sentencing:

> "And I'm surprised that the maximum in this case is as much as—is as low as it is. And I think that perhaps the fact that she [the victim] refused to get into the car may have prevented a more serious charge being brought against the defendant."

The State contends that the complained-of statement by the trial court was merely a comment upon evidence presented in aggravation and mitigation.

Absent an abuse of discretion, a reviewing court will not disturb a sentence which falls within the statutory limits. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641; *People v. Abernathy* (1989), 189 Ill. App. 3d 292, 315, 545 N.E.2d 201.

A person convicted of child abduction is guilty of a Class 4 felony. (Ill. Rev. Stat. 1991, ch. 38, par. 10—5(d).) The sentence for a Class 4 felony ranges from one to three years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(7).) Thus, defendant received the maximum sentence allowed by statute.

Defendant complains that the trial judge made no statement in mitigation but rather only considered a possibility not based on the evidence in the case, *i.e.*, whether the victim's refusal to enter the car prevented the commission of a more serious offense.

A trial court is not required to expressly indicate its consideration of all mitigating factors. Absent some evidence to the contrary, a trial court is presumed to have considered mitigating factors where they are argued before the court. *People v. Watkins* (1990), 206 Ill. App. 3d 228, 246, 563 N.E.2d 806, citing *People v. Alcazar* (1988), 173 Ill.

App. 3d 344, 527 N.E.2d 325; *People v. Burba* (1985), 134 Ill. App. 3d 228, 479 N.E.2d 936.

At the sentencing hearing in the present case, defense counsel argued that defendant had no prior arrests, lived at home with his family, was never alleged to have physically attacked or touched the complainant, was employed until his incarceration, had cooperated with defense counsel and appeared before the court on each scheduled court date. Also, defendant's mother filed a petition for him for immigrant status in this country.

In addition, the trial court stated it had read the defendant's pretrial report and the presentence report. These reports noted that defendant was born in 1968 and lived in Ecuador, South America, until he came to the United States in 1989. Defendant had no prior adult convictions and juvenile records had not yet been received. Contrary to defense counsel's argument, the reports stated that defendant had no employment history in this country and was totally supported financially by his parents. Defendant also appeared to be illegal and deportable with a conviction.

According to *Watkins*, the trial court is presumed to have considered all the above factors in sentencing defendant, and we find no evidence in the record to indicate otherwise.

Defendant also compares the statement made by the trial judge at sentencing with a similar statement made in *People v. McCray* (1983), 116 Ill. App. 3d 24, 451 N.E.2d 985.

The *McCray* case, however, does not support defendant's position that the trial court's statement manifested prejudice against defendant resulting in an excessive sentence. The defendant in *McCray* complained on appeal that the trial court erred in considering a hypothetical situation as an aggravating factor in sentencing where the trial court "expressed concern about what would have happened had defendant been discovered while committing the burglary." (*McCray*, 116 Ill. App. 3d at 27.) *McCray* found that the "trial court's comment should not be read out of context" and the "court was merely weighing various factors in aggravation and mitigation." (*McCray*, 116 Ill. App. 3d at 27.) The court then concluded that, in light of the entire record, the trial court's comments did not show that it relied on improper considerations or drew conclusions not supported by the record and thus did not constitute reversible error.

■ Even if a sentencing judge makes some personal observations, while not encouraged, no abuse of discretion is generally found where the record shows that the sentencing court considered proper sentencing factors because the trial court is ordinarily best situated to

tailor a sentence. *People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300 ("[t]he fact that the sentencing judge added some personal observations before imposing sentence, while not to be encouraged, is of no consequence"); *People v. Bosley* (1990), 197 Ill. App. 3d 215, 222, 553 N.E.2d 1187 (the sentencing court's comment regarding the rate of recidivism for sex offenders who receive no counselling "was of no untoward consequence in the exercise of its sentencing discretion" even though such personal observations are not encouraged); *People v. Lyell* (1982), 109 Ill. App. 3d 819, 823, 441 N.E.2d 78 (the trial court's comments about the future conduct of defendant who pled guilty to charges of indecent liberties with a child and child pornography were "harmless speculation").

In light of the applicable statutory guidelines for sentencing, the arguments advanced by defense counsel at the sentencing hearing, the information gleaned from the pretrial and presentence reports, and a review of the entire record, we find no abuse of the trial court's discretion in imposing a three-year sentence.

Lastly, defendant asserts that he was not proved guilty beyond a reasonable doubt. Defendant argues that (1) the testimony of the victim was contradictory, prompted by the State, and defies common sense; (2) his alleged statement that he was a "lonely guy and merely wanted to talk to the girl" negates the unlawful purpose; and (3) there was no independent corroborating evidence that he acted for other than a lawful purpose.

The State contends that the victim's testimony was clear, uncontradicted, sufficient to prove guilt beyond a reasonable doubt, and corroborated by the testimony of police officers and her mother.

When a defendant challenges the sufficiency of evidence, a reviewing court is obligated to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461.) The trier of fact must evaluate the inferences to be drawn from the evidence, assess the credibility of the witnesses, determine the weight to be given their testimony and resolve any evidentiary conflicts. *Young*, 128 Ill. 2d at 51.

Testimonial discrepancies do not necessarily destroy the credibility of a witness but go only to the weight to be afforded his testimony. (*People v. Ranola* (1987), 153 Ill. App. 3d 92, 98, 505 N.E.2d 1191.) Moreover, a jury is not required to accept the defendant's version of the events but rather must consider the probability or improbabilities of his testimony, the circumstances surrounding the incident, and the

testimony of the other witnesses. (*Ranola*, 153 Ill. App. 3d at 98.) Furthermore, the identification of the defendant by a single witness is sufficient to sustain a conviction where the witness had an adequate opportunity to view the defendant and the in-court identification is positive and credible. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.

■ We find that ample evidence exists in the present case for the jury to convict defendant. Absent defendant's denials, which the jury is free to accept or reject in light of the circumstances presented, all the evidence and testimony corroborates the testimony given by the victim regarding the events of March 12 and the identification of defendant, his apparel and the blue car he was driving.

For all the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

TULLY, P.J., and CERDA, J., concur.