THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME JOHNSON, Defendant-Appellant.

(No. 11576;

Fourth District—May 24, 1973.

John F. McNichols, of Defender Project, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Arthur J. Inman, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant-appellant Jerome Johnson was charged, in an eleven count indictment, with the crime of murder. He was convicted in a bench trial and sentenced to an indeterminate term of 20 to 30 years in the penitentiary.

The victim of the crime was Thomas Porter, a 12-year-old child with whom defendant, an admitted homosexual, became acquainted while defendant was employed at the Boys' Club in Springfield, Illinois. Defendant confessed that the deceased came to his home, that he was "playing" with the boy, that the boy became excited and wanted defendant to quit, that the boy was laughing and giggling whereupon defendant placed a pillow over the boy's head in an effort to quiet him. Defendant then buried the child's body in his basement where it was found, in an advanced state of decomposition, after defendant had confessed. Defendant, in his confession, stated that he did not intend to kill the boy, and that he tried to revive him. The defendant did not testify in his own behalf. Defendant urges several assignments of error, only one of which we will consider at this time.

At the trial the defendant maintained that he was insane at the time of the commission of the acts which resulted in Porter's death, and this was his sole defense. He urges that the denial of his motion for continuance, on grounds that his only witnesses in support of the defense were unavailable, was error. The record on this issue is confused,

muddled and incomplete. On October 20, 1970, at the conclusion of trial before a jury which found defendant competent to stand trial, the defendant was arraigned and entered a plea of not guilty to the charges. On Wednesday, January 6, 1971, Judge William H. Chamberlain, who had presided over the competency hearing, set trial on the indictments before Judge Creel Douglass commencing Monday, January 11, 1971. On the following day, Thursday, January 7, 1971, the defendant filed a verified motion for continuance under the provisions of Ill. Rev. Stat. 1969, ch. 38, pars. 114—4(a), 114—4(b)(3), which in pertinent part provides: "The defendant  *  *  *  may move for a continuance. If the motion is made more than 30 days after arraignment the court may require that it be supported by affidavit  *  *  *  A motion for continuance made by defendant  *  *  *  may be granted when:  *  *  * A material witness is unavailable and the defense will be prejudiced by the absence of his testimony; however, this shall not be a ground for continuance if the State will stipulate that the testimony of the witness would be as alleged;  *  *  *."

The motion for continuance stated that both of defendant's psychiatrists would be unavailable to testify in defendant's behalf at the trial scheduled to commence on the following Monday, January 11, 1971. The motion stated that Dr. Baumann was ill, and confined to St. John's Hospital, and that the other psychiatrist was then in the State of Florida. The motion continued that the testimony of both doctors was crucial to the defense, that the defendant would be prejudiced by being tried without such testimony, and prayed that trial be postponed for at least 30 days. On the same day that the motion was filed, January 7, 1971, Judge Douglass heard the motion for continuance. At the hearing defense counsel stated that he was willing to go to trial on Monday, January 11th with the understanding that later in February, when his two psychiatrists were available, the court would receive their testimony. The State's Attorney objected saying "I don't think the defense has the right to divide this case." He also objected to the allowance of the motion because it did not ask for "*  *  *  some specific trial setting  *  *  *." At this juncture both the State's Attorney and defense counsel commenced talking about two "suggested stipulations" which were appended to the motion for continuance. During the subsequent trial they were introduced into evidence as defendant's exhibits 1 and 2 and are as follows:

### STIPULATION OF THE TESTIMONY OF
### DR. DAVID V. HICKS

If Dr. David V. Hicks was called he would testify that he is a licensed physician authorized to practice in the State of Illinois, and that he is

also a licensed psychiatrist authorized to practice in the State of Illinois. He limits his practice to the field of psychiatry. He has obtained and received all the necessary background and education which would qualify him as an expert in the field of psychiatry and capable of testifying as to the sanity of Jerome Johnson.

He would further state that he had an opportunity to personally interview Jerome Johnson. He had available to him numerous tests that were run on Jerome Johnson for psychological evaluation. That based on his examination and based on the tests that were run on Jerome Johnson he came to his conclusion as an expert in the field of psychiatry that Jerome Johnson was at the time of his interview an insane person.

He would further testify that at this time Jerome Johnson is insane and that at the time of the alleged homicide on June 26, 1970, Jerome Johnson was an insane person.

He would further testify that at the time of the occasion of the alleged offense on June 26, 1970, the symptoms of this mental disease would be much more prevalent than they are today.

Jerome Johnson has a schizophrenic profile. He is a person that is insane and was not criminally responsible on June 26, 1970, as a result of this mental disease.

He lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law because of this mental disease.

\* \* \*

## STIPULATION OF THE TESTIMONY OF
## DR. MILTON C. BAUMANN

If Dr. Milton C. Baumann was called to testify he would state that he is a licensed physician authorized to practice in the State of Illinois. His practice is limited to neurology and psychiatry. He is a licensed psychiatrist having extensive education and training in the field of psychiatry. He would qualify in every respect as expert in the field of psychiatry, and would show by his testimony that he is authorized to testify as expert in the field of psychiatry, and as to the sanity of Jerome Johnson.

Dr. Baumann would testify that he personally examined Jerome Johnson. Jerome Johnson appeared at his clinic, Springfield, Illinois and went under a series of psychological tests. While appearing at his clinic in Springfield, Illinois, a licensed psychiatrist by the name of Dr. David V. Hicks also examined Jerome Johnson.

Dr. Baumann would testify that in his opinion, as an expert, based on the tests that were conducted on Jerome Johnson and based on his personal interview with Jerome Johnson that in his professional opinion

Jerome Johnson is insane, that Jerome Johnson was insane at the time of his interviews, and at the time of his testing, and further that he is insane now, and that he was insane on June 26, 1970, the date of the alleged homicide. Further that Jerome Johnson is a simple schizophrenic, and because of this schizophrenic condition, or this mental disease, Jerome Johnson lacks substantial capacity to appreciate the criminality of his conduct and cannot conform his conduct to the requirements of the law. And because of the aforementioned mental disease Jerome Johnson was not criminally responsible for his conduct on June 26, 1970.

*   *   *

The State's Attorney stated to the Court that he objected to the "stipulations" since they contained no facts, only conclusions. He conceded that Dr. Baumann was ill, and would be unavailable to testify during the trial, but argued that Dr. Hicks could be compelled to return from Florida and appear, to which defense counsel responded that Dr. Hick's attorney had told him that Hicks could not come into the State of Illinois at the particular time in question because of marital difficulties which would be resolved within thirty days. He also stated that he had had no recent opportunity to talk to Drs. Baumann (having learned only the preceding day of his illness) and Hicks in order to secure factual data for the purpose of incorporating it in a stipulation, that he only knew that each would testify that defendant was insane at the time of the occurrence. The parties then began arguing about some of the language in the proposed stipulations, the State's Attorney insisting that some be stricken, and the defendant insisting that it not be. This rather lengthy argument concluded by the State's Attorney saying that he would agree to the stipulation provided certain portions were stricken and with defense counsel refusing to agree to striking any portions of the stipulations. No agreement was reached about the stipulation. No stipulation was entered into. The court then stated that the motion for continuance was granted to February 23rd. The State's Attorney then inquired (and this is demonstrative of the confused state of the proceedings since, as we have noted, no stipulation had been agreed upon) "Even though we have stipulated?" To which the trial judge responded "I think so. I think the Court should have the testimony of the two psychiatrists."

Venturing further into unreality the State's Attorney stated *"The stipulation of the People is binding only insofar as it applies to the motion for continuance and has no binding on the trial in this case. It is only binding to prevent a further continuance."* The trial judge then reversed his ruling that the continuance was granted to February 23, saying "Well, let me read more about it, and refresh my memory and make the final decision tomorrow morning." Under date of January 8, 1971, the follow-

ing docket entry appears: "In camera inspection of police file held. Motion for continuance denied. Stipulation as to testing of Dr. Hicks accepted by Court and stipulation as to the testimony of Dr. Baumann accepted omitting the last sentence therein."

On January 13, 1971, prior to the introduction of any evidence, defense counsel stated that "When we discussed the matter of continuance the other day, none of that was taken down on the record." (We assume that this refers to a further discussion had with the trial judge on January 8, 1971, in view of the foregoing docket entry). He went on to state that he wanted the record to show that he had then objected to the refusal of the court to grant the motion for continuance, that the court had, in denying the motion "* * * allowed a stipulation", that no stipulation had been entered into, that the State "* * * did not agree with it * * *" but had instead wanted "* * * certain parts stricken and certain parts kept * * *" to which the court responded, "Let the record show your objection and let it stand as it is. Overruled." The trial then commenced. During the trial, the People filed a motion (granted January 14, 1971) pursuant to section 115—6 of the Criminal Code reciting that defendant had given notice of his intention to rely on the defense of insanity and requesting that the Court enter an order that Dr. Robert Chapman, a psychiatrist, be appointed to examine defendant. The motion prayed that the doctor "* * * make a report of such examination to the Court." The trial judge allowed the motion and directed that Dr. Chapman "* * * make a report in writing to the attorneys *and to the Court* concerning the results of such examination." Dr. Chapman did in fact make such an examination and the results thereof are contained in a four page document which appears at pages 42, 43, 44 and 45 of the common law record. Dr. Chapman was not called as a witness at the trial nor was there any stipulation as to the use of the report. His report concludes that defendant was sane at the time of the occurrence in question and states, at length, the reasons upon which he predicated his opinion.

Having put in all of his evidence on behalf of the People and prior to resting his case, the State's Attorney asked the court to rule as to whether or not there was, at that point, any evidence raising the issue of insanity. The court ruled that there was none, whereupon the People rested.

At this juncture the situation of the defendant was this: The court had "accepted" a "stipulation" to which no one had stipulated, and this over the objection of the defendant. The motion for continuance having been denied, he had not a single witness to support his defense of insanity. The court also had before it, in the form of Dr. Chapman's report,

positive evidence that defendant was not insane. Confronted with this state of affairs defendant "submitted" to the court the "stipulations" above set forth. The State's Attorney promptly objected saying that these were matters "* * * not in the record" and insisted that the defendant have the two documents marked as Exhibits and then offered in evidence. The documents were then marked as defendant's exhibits 1 and 2 whereupon the State's Attorney objected to the exhibits on the ground that there were insufficient facts contained therein to support the opinion given. The court overruled the objection and the defense rested. In rebuttal, among others, the People called Dr. Albert Ludin, a psychiatrist, who had examined the defendant on July 14, 1970, and who testified that defendant was "* * * a schzoid individual with neurotic tendencies of compulsive obsessive type in the area of sex." The doctor's direct testimony covers some nine pages of the record. His conclusion was that defendant was sane at the time of the occurrence. The People also called Officers Bowman, Dickerson and DeMarco who testified that defendant was sane in their judgments, on the occasions they had observed him following the date of the occurrence. The trial judge then found defendant to have been sane on the date in question.

■■ The statute under which defendant sought a continuance clearly makes the granting of such a motion discretionary with the trial judge since it provides that the motion "* * * *may* be granted * * *." The denial of a motion in continuance will not be considered as error unless an abuse of discretion can be found. (*People v. Bodine*, 114 Ill.App.2d 205, 252 N.E.2d 234.) Here that discretion was abused.

■■ The court heard the testimony of the witnesses called by the People on the issue of defendant's sanity, his sole defense, observed them while testifying and was apprised, in detail, of the reasons and facts supporting their opinions. By denying defendant's motion for continuance he, in effect, forced the defendant to rely upon two documents to which neither side had stipulated, which contained only the statements that Drs. Baumann and Hicks had examined the defendant and would testify that in their opinion defendant was insane at the time in question. The nature and extent of their examinations and tests were not before the Court. The reasons and facts upon which their opinions were founded were not before the court. In short, the court's action deprived the defendant of the opportunity to persuade on the sole issue upon which he relied for his defense. This was error.

■■ In addition it was error for the court to receive and consider the report of Dr. Chapman. Due process requires that defendant be afforded the right to confront and to cross-examine witnesses, and this was denied him. Section 115—6 of the Criminal Code appears to be a pro-

vision which affords the People, in the event of a defense of insanity asserted to procure psychiatric examination of the defendant by a doctor chosen by the State's Attorney. The statute provides that a copy of the doctor's report is to be furnished to defendant's attorney, it does *not* provide that a copy be furnished to the trial judge as was done here, nor does the statute provide that the report is *evidence* which may be used against the defendant. The statute clearly does not contemplate that a report of psychiatric examination procured by court order may be substituted for sworn testimony, and in derrogation of defendant's right to confront and to cross-examine the witness.

For these reasons, the judgment of the trial court finding defendant to have been sane at the time of the commission of the crime is reversed. This cause is remanded for an evidentiary hearing on that issue. If, after the ordered evidentiary hearing, the finding of the trial court is that the defendant was not guilty by reason of insanity, the judgment of conviction shall be vacated, and a judgment of not guilty by reason of insanity shall be entered and appropriate further proceedings instituted. Such judgment shall be certified to this court and this appeal thereafter dismissed as moot. If the finding is one that the defendant was sane at the time of the offense, such finding together with the report of proceedings of said evidentiary hearing shall be certified to this court. Our opinion on other issues in this appeal will be held in abeyance pending determination of the insanity issue.

Reversed in part and remanded with directions.

CRAVEN, P. J., and TRAPP, J., concur.