THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL S. JOYCE, Defendant-Appellant.

Second District   No. 2—90—0229

Opinion filed September 4, 1992.

BOWMAN, J., dissenting.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva, and Craig T. Martin, of Chapman & Cutler, of Chicago (William L. Browers, John X. Breslin, Judith Z. Kelly, and Jay Paul Hoffman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendant, Michael Joyce, was charged by indictment with the offense of child abduction (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)). Following a bench trial in the circuit court of Kane County, defendant was convicted of child abduction and sentenced to a 30-month term of probation, with the first 12 months to be intensive probation.

Defendant raises the following issues on appeal: (1) whether section 10—5(b)(10) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)) is unconstitutionally vague; (2) whether the indictment failed to set forth adequately the nature and elements of the charged offense; (3) whether the attempt language of the child abduction statute violates the principles of due process and proportionate penalties; (4) whether defendant was proved guilty beyond a reasonable doubt; (5) whether the trial court relied on an unconstitutional presumption set forth in the statute; and (6) whether the trial court's denial of a defense motion for a continuance to obtain an evaluation of defendant's sanity was an abuse of discretion. We note that defendant raised similar arguments, including the challenges to the constitutionality of section 10—5(b)(10) in case No. 88—CF—52. See *People v. Joyce* (1991), 210 Ill. App. 3d 1059 (*Joyce I*).

On February 16, 1988, a Kane County grand jury indicted defendant on three counts of child abduction. Count I of the indictment alleged that, between December 12 and 20, 1987, defendant intentionally attempted to lure B.N., a child under age 16, into a motor vehicle for other than a lawful purpose and without the consent of a parent or lawful custodian.

Defendant sought a bill of particulars to specify both the manner of the alleged attempt to lure B.N. into a motor vehicle and the unlawful purpose that defendant allegedly harbored at the time. The trial court ordered the State to supply the possible unlawful purposes on which it was relying. The State responded by supplying a list of 29 possible unlawful purposes which included homicide, battery, kidnapping, sexual assault, and sexual abuse.

Defendant then moved to dismiss the indictment, alleging, *inter alia*, that section 10—5(b)(10) of the Code is vague, overly broad, and unenforceable and that, by creating an improper presumption, section 10—5(b)(10) shifts the burden of proof to the defendant to prove a lawful intent. On June 9, 1988, the trial court denied the motion, finding that section 10—5(b)(10) was not unconstitutionally vague or overly broad and that it did not impermissibly shift the burden of proof to the defendant.

Defendant again moved to dismiss the indictment. He sought reconsideration of the trial court's denial of his June 9 motion and additionally argued that section 10—5(b)(10) of the Code improperly combined choate and inchoate offenses since, in contradiction of the attempt statute (Ill. Rev. Stat. 1987, ch. 38, par. 8—4), luring and attempting to lure a child are treated the same. The trial court denied both reconsideration of its June 9 order and the new motion to dismiss.

On December 23, 1988, defendant's attorney was allowed to withdraw from the case and the Kane County public defender was appointed to represent defendant. On September 29, 1989, the State filed an additional bill of particulars indicating that the offenses occurred between December 10 and 18, 1987, on a school day. On October 16, 1989, the public defender moved for a continuance because defendant had decided to retain different counsel. The trial court granted the continuance but informed defendant that the next trial date would be final and that the new attorney should be so informed. The court set a status date of October 23, 1989. On October 23, the public defender informed the court that attorney Stephen Komie would enter an appearance for defendant on October 27. At that time, the court set a trial date of December 4, 1989. Defendant appeared

before the court with attorney Komie on October 27. Komie indicated that financial arrangements were being finalized and requested a status date. The court agreed to set a date, but informed counsel that the December 4 trial date would not be continued. The court also informed defendant that the public defender would remain as counsel until private counsel entered a formal appearance. On November 9, attorney Komie entered his appearance, and the public defender was allowed to withdraw from the case.

On December 4, 1989, the case proceeded to trial. The State presented the testimony of B.N., her parents, and two Batavia police officers. Defendant presented the testimony of the same two police officers, B.N.'s mother, defendant's wife and Dr. John Kluczynski.

The following evidence was adduced at trial. B.N. was born on February 2, 1973, and lived with her parents in Batavia, Illinois, in December 1987. During that time, neither her mother nor her father gave defendant permission to ask B.N. into a car or to give her a ride home from school.

B.N. would normally catch the bus to Valley Lutheran High School at a location that was three blocks north of her home at Washington and State. A church with a parking lot was located near her bus stop. One day in December when there was snow on the ground, B.N. got off the bus at the usual time of 3:25 p.m. No other student got off the bus at the stop that day. As B.N. walked south on Washington toward her home, she heard a vehicle turn into the driveway of the church parking lot behind her. B.N. then heard a man yell, "Do you want a ride?" B.N. turned around and saw a man with his face sticking out of the window of a pickup truck parked in the lot, 10 to 15 feet away. The driver's side of the truck was facing B.N. B.N. said "[n]o" to the man in the pickup truck. The man then stated, "Come on, I don't bite." B.N. again said "[n]o." As she continued walking south, B.N. heard tires squealing and turned back to see the truck driving away from the parking lot. B.N. then went home and told her mother what had happened.

B.N. described the truck and the driver, whom she had never seen previously. The truck was "blue-grayish" with "a lot of rust on it." She did not recall whether the truck had any dents but stated that it was missing its tailgate. According to B.N. the man in the truck had dark brown, uncombed hair and a couple days of beard growth. The man was 24 to 26 years old and had little, dark eyes. In court, B.N. identified defendant as the man she saw in the pickup truck.

B.N. also testified about an incident that took place on January 15, 1988. As she got off the bus after school on that day, B.N. saw

the defendant across the street, driving north on Washington. He was in the same truck he was in in December. Defendant was almost standing up in the driver's seat, and his upper body was hanging out of the window as he drove at five to seven miles per hour. As B.N. walked south, she saw the truck turn a corner off of Washington. B.N. then stopped to talk to two friends who were in a car driven by the mother of one of the friends. Thirty seconds after seeing the truck turn, B.N. noticed it again behind her friend's mother's car, pointed south. Defendant, who was now fully inside the truck, did not say anything. At that point, B.N. said jokingly to her friends, "[t]he child molester is back."

B.N. next walked to a nearby store. She had already entered the store to get something to eat when the truck passed by, heading west on Wilson. When she came out of the store a minute later and walked south on Washington, the truck was going slowly south on Washington. The truck turned east on Webster Street while 15 feet ahead of B.N. B.N. went home and told her mother that she had seen the man again. B.N. and her father then went to the Batavia police station and spoke with Officer Donald Hubbard. B.N. described the offender and the truck to the police. She looked at a group of photographs and selected defendant's photograph, stating "[t]hat's him. I am positive."

Defendant opened his case with the presentation of a stipulation that the record custodian of defendant's place of employment would testify consistently with certain defense exhibits, which reflect defendant's places and hours of work on various days in December 1987. Defendant did not, however, punch a time clock at the jobsites.

Sherida Joyce was married to defendant for one year as of the time of trial and lived with him in Elgin in December 1987. At that time, defendant owned a 1985 Dodge Ram pickup truck which was medium blue with a silver metallic glaze. According to defendant's wife, the truck did not have any rust spots, but it did have a tailgate. Defendant's truck was not operational in December 1987 due to a problem with the brakes. Defendant's wife would drive defendant to and from work each day between December 7 and 31. Defendant normally worked from 7 a.m. to 3:30 p.m. and would usually get home around 4:30 p.m. Two photographs of defendant's truck which B.N. had previously failed to recognize did in fact show defendant's truck. Three of the photographs which B.N. picked out did not show the truck. The photographs of defendant's truck were taken in the spring or summer of 1988.

Dr. John Kluczynski also testified for defendant. Dr. Kluczynski is a clinical psychologist and was the senior psychologist at the Kane

County Diagnostic Center when defendant was evaluated in December 1988. Defendant's tests were administered by a doctoral student in psychology under Dr. Kluczynski's direction. The student also conducted a clinical interview of defendant. Dr. Kluczynski did not personally meet with defendant, but did supervise the work by the student.

According to Dr. Kluczynski, the tests and interview revealed that defendant suffers from the chronic mental disorder of paranoid schizophrenia. The date of the onset of the disorder was not determined. Due to the disorder, defendant would have difficulty in accurately judging and responding to social or interpersonal situations. He would distort situations and fail to understand circumstances and his role in them and on occasion would dismiss his judgment and act on his feelings and thoughts. Defendant's psychotic thinking evidenced a loss of reality and could affect his ability to appreciate the imposition and requirements of the law. The Kane County Diagnostic Center recommended that defendant receive psychotherapy and that a psychiatric evaluation be done to determine if psychotropic medication should be provided.

The diagnostic center did not assess defendant's fitness or sanity. Dr. Kluczynski would have had to interview defendant and review other background materials, such as police reports, to make a determination whether the disease was in an acute phase or whether defendant was sane at the time of the crime. Defendant was able to control himself on the date of testing, but Dr. Kluczynski was unable to say if defendant had such control in December 1987. Defendant's actions could have been the product of his mental illness or a manifestation of bad judgment.

At the close of Dr. Kluczynski's testimony defendant's attorney moved for a continuance in order to obtain an evaluation of defendant's sanity at the time of the offense. Counsel stated that he had not had the case for very long and that he had not been able to contact the doctor since receiving the psychological report. The State objected to the motion for continuance, and the trial court denied the motion stating that the case had been pending for a long time and further that defendant had been competently represented.

In convicting defendant of child abduction, the trial court found B.N.'s testimony to be credible and found the identity of the offender to be proven. The court found that defendant's conduct constituted luring as that term is commonly defined and that defendant's purpose was demonstrated to be unlawful, whether or not the statutory inference for child abduction cases was relied upon. The court also found

that defendant had not established insanity by a preponderance of the evidence. The court then found defendant guilty but mentally ill and ordered a follow-up psychological examination. After denying defendant's motions in arrest of judgment and for a new trial, the trial court sentenced defendant to a 30-month term of probation, with the first year to be served on intensive probation. Defendant thereafter filed his timely notice of appeal.

As indicated at the outset of our opinion, defendant raises certain issues in the instant appeal that are similar to issues he raised in *People v. Joyce* (1991), 210 Ill. App. 3d 1059, which case was still pending at the time defendant's initial appellate brief was filed. In particular, defendant argues that section 10—5(b)(10) of the Code is unconstitutional because certain elements of the offense, the luring or attempted luring of a child "for other than a lawful purpose," are impermissibly vague. In addition, defendant argues that, even if the statute is not unconstitutionally vague, his indictment should have been dismissed because, although the indictment tracks the language of the statute, the offense of child abduction is one which requires greater specificity in the charge.

In his initial brief to this court, defendant states that these two issues, but for the name of the complainant, are identical to issues he raised in *Joyce I* and further that he incorporates by reference and adopts the arguments presented in the prior appeal as his arguments in the instant appeal. In his reply brief, defendant acknowledges that this court has subsequently ruled adversely to him on these issues.

■ Specifically, we found in *Joyce I* that the child abduction statute was not impermissibly vague and stated that " '[g]iven its ordinary meaning, the phrase "other than a lawful purpose" means any purpose which is unlawful.' " (*Joyce*, 210 Ill. App. 3d at 1065, quoting *People v. Williams* (1990), 133 Ill. 2d 449, 454.) We also found that, since the *Williams* court held that the meaning of the phrase "other than a lawful purpose" referred to any unlawful purpose, the ordinary meaning of the phrase "for a lawful purpose" therefore referred to any purpose that was lawful. 210 Ill. App. 3d at 1066.

Regarding the sufficiency of the indictment, we noted in *Joyce I* that the indictment approved in *Williams* also tracked the language of section 10—5(b)(10) and did not specify any particular unlawful purpose. We found, therefore, that defendant was sufficiently apprised of both the nature and the elements of the offense. 210 Ill. App. 3d at 1067, citing *Williams*, 133 Ill. 2d at 454.

As stated, defendant concedes that we have ruled adversely to him on these identical issues concerning statutory vagueness and the

sufficiency of the indictment. Defendant does not argue that we should reconsider our previous holdings in *Joyce I*, and we see no reason to do so. In the instant case, therefore, the trial court's rulings in this regard are affirmed.

Defendant also contends that section 10—5(b)(10) of the child abduction statute is unconstitutional in that it violates the principles of due process and proportionate penalties. This particular question is at issue pursuant to our order of July 30, 1991, granting defendant's motion for leave to add another issue to his brief. Specifically, defendant argues that the statute, which punishes both luring and attempting to lure a child into a motor vehicle for other than a lawful purpose as Class 4 felonies, violates article I, section 11, of the Illinois Constitution because it does not punish according to the seriousness of the crime, and it violates due process because its penalty provisions are not rationally related to the statute's objective. (Ill. Const. 1970, art. I, §§2, 11.) As indicated earlier, defendant's pretrial motion to dismiss the charge on the basis that choate and inchoate offenses are combined in section 10—5(b)(10) contrary to the attempt statute (Ill. Rev. Stat. 1987, ch. 38, par. 8—4) was denied.

Defendant argues that the child abduction statute violates the proportionality clause of the Illinois Constitution in that it creates impermissible prosecutorial discretion, since the State could have chosen to prosecute defendant under the attempt statute, in which case defendant would have been convicted of only a Class A misdemeanor. (See Ill. Rev. Stat. 1987, ch. 38, par. 8—4(c)(5).) We believe this argument to be fatally flawed in at least two respects.

■ First, the defendant errs in assuming that the State had the option to prosecute him under either the attempt statute or the child abduction statute. Rather, under the "preemption doctrine," when the legislature specifically made attempted child abduction a Class 4 felony under the child abduction statute, it preempted any opportunity for the State to charge defendant under the more general attempt statute.

This court recently applied the preemption doctrine in *People v. Stupka* (1992), 226 Ill. App. 3d 567. In *Stupka*, we held that, where the statute prohibiting the delivery of a controlled substance specifically included attempted delivery of a controlled substance, the State could not prosecute the defendant under the more general attempt statute. (*Stupka*, 226 Ill. App. 3d at 574.) We made a further observation which is equally applicable here: that the express inclusion of attempt in the specific offense demonstrated the legislature's intent to

treat the attempted offense equally as seriously as the completed offense. 226 Ill. App. 3d at 574.

A second flaw in defendant's argument is that it is not supported by the case law he cites. In *People v. Christy* (1990), 139 Ill. 2d 172, the same act (commission of a kidnapping with a category I weapon) supported convictions both of aggravated kidnapping, a Class I felony, and armed violence, a Class X felony. The court held that the possibility of two different penalties for identical offenses violated the proportionality clause. (*Christy*, 139 Ill. 2d at 181.) The court also rejected the State's argument that the difference in penalties was simply a matter of prosecutorial discretion. The court reasoned that, given such discretion, prosecutors would usually choose to charge the defendant with the more serious offense, thus nullifying the less serious offense and violating the intent of the legislature in enacting both the statutes. 139 Ill. 2d at 180.

As such, *Christy* offers no substantive support. Given that the preemption doctrine eliminates prosecutorial discretion in charging defendants with the offense involved here, this case does not involve two different penalties for two identical offenses, but equal penalties for different, though related, offenses. While it is true that the child abduction statute effectively nullifies the attempt statute insofar as this particular offense is concerned, that is exactly what the legislature had in mind. The plain language of the statute itself is the best guide to the legislature's intent. Clearly, the legislature decided and intended to make attempted child abduction as serious an offense as completed child abduction.

■ We also disagree with defendant's argument that the statute violates due process because its penalty provisions are not rationally related to the statute's objective. Defendant does not deny that the legislature has broad discretion in declaring criminal offenses and assigning punishments thereto. Due process requires only that a statute be " 'reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' " (*People v. Morris* (1990), 136 Ill. 2d 157, 162, quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.) Defendant also does not deny that the State has "a substantial interest in the protection of its children, and may validly proscribe the luring or *attempted luring* of children into motor vehicles for criminal purposes." (Emphasis added.) (*People v. Williams* (1990), 133 Ill. 2d 449, 457.) Nor does defendant assert that this offense is so lacking in seriousness that a Class 4 penalty is inherently excessive or

shocking to the conscience. *People v. Steppan* (1985), 105 Ill. 2d 310, 320.

Defendant instead relies on cases that hold that, where the legislature declares its intention to characterize one offense as more serious than another, it may not mandate harsher penalties for the less serious offense (*People v. Wagner* (1982), 89 Ill. 2d 308; *People v. Bradley* (1980), 79 Ill. 2d 410) and that a statute must bear some reasonable relationship to the evil it is intended to prevent (*People v. Morris* (1990), 136 Ill. 2d 157). Here, the legislature has classified the attempted and completed offenses under a single heading, indicated a desire to treat them with equal gravity, and assigned equal penalties to them.

Conceding that the State has a valid and vital interest in preventing and punishing the attempted abduction of children, defendant's argument comes down to the *non sequitur*, unsupported by citation of any relevant case authority, that the Class 4 penalty the legislature has set for the offense of which defendant has been convicted is "unnecessarily harsh, and does not reasonably serve the interest that the legislature seeks to protect." Defendant offers another *non sequitur* in support of his argument: because there is, according to defendant, less danger to the child from an attempted abduction than from a successful abduction, the punishment should be less as well.

We find now that defendant's arguments go at most to the wisdom of the legislature's decision and not to any issue of due process. Defendant essentially argues that due process prevents the legislature from penalizing an attempted offense as harshly as a completed offense. However, defendant cites no authority for a proposition that would necessitate massive revision of our criminal statutes, including the attempt statute. Such relevant cases as we have found instruct us that the legislature has broad discretion to assign identical penalties to offenses even though some might think one offense less serious than the other. See, *e.g., People v. Touhy* (1956), 9 Ill. 2d 462, 465-66 (no constitutional violation in equal punishment for prison escapee and one who aided in escape); *People v. Houston* (1976), 43 Ill. App. 3d 677, 681 (upholding legislature's decision to upgrade all forms of pandering to Class 4 felonies where previously only pandering by compulsion was so punishable).

It is clear that the State may properly proscribe conduct such as that for which defendant was convicted. By outlawing attempted as well as completed child abductions, the State not only promotes the punishment of potential child abductors before they are successful, but also addresses the harm to children that may occur even in unsuc-

cessful abductions. We therefore reject defendant's arguments in this regard.

We would also point out that, in his motion to add the above-discussed issue, defendant noted that the identical question was raised in *People v. Schmidt*, a case which was pending in this court at the time defendant's motion was filed. In the interim, this court has rendered a decision in *Schmidt* which is contrary to defendant's stated position. (*People v. Schmidt* (2d Dist. April 13, 1992), No. 2—90—1294 (unpublished order under Supreme Court Rule 23).) Of course, Rule 23 provides that orders issued pursuant to that rule are not precedential and may be invoked only to support certain other contentions, none of which are applicable here.

We next consider defendant's contention that the trial court abused its discretion by denying defense counsel's motion for a continuance to obtain an evaluation of defendant's sanity at the time of the offense. In a related argument, defendant contends that if there was no abuse of discretion, then defendant must have received ineffective assistance of counsel in that his trial attorney failed to adequately and timely prepare the insanity defense. We disagree on both accounts.

As indicated earlier in this opinion, at the close of Dr. Kluczynski's testimony defense counsel moved for a continuance in order to obtain an evaluation of defendant's sanity at the time of the offense. The trial court denied the motion, noting that the case had been pending for a long time and further that defendant had been competently represented. Defendant maintains that the trial court's action in this regard denied him a fair trial and constituted an abuse of discretion.

The case law cited by defendant in support of his argument, however, is either inapposite or actually tends to support the State's position that the trial court acted properly in denying the motion. In *People v. Panker* (1970), 120 Ill. App. 2d 203, the court noted that, upon a proper showing that for want of time counsel has not been able properly to prepare the case or that the cause is not ready for trial for want of opportunity for preparation owing to no fault of the accused, the trial court in the exercise of its discretion should postpone or continue the case if necessary. (*Panker*, 120 Ill. App. 2d at 208.) The court then held that the trial court abused its discretion in deny-ing a motion for a continuance where only 14 days had passed since the defendant's arraignment, no previous continuances had been requested, and neither defendant nor his attorney had any notice that the matter was going to proceed to trial on the day the continuance was requested. 120 Ill. App. 2d at 208.

In *People v. Ramshaw* (1979), 75 Ill. App. 3d 123, the defendant moved for a continuance due to the fact that a material witness was ill and could not be present in court to testify. The appellate court held that denial of the motion constituted an abuse of discretion where the trial court recognized that the witness was "absolutely necessary" to the case but still denied the motion and where the case had been carried on expeditiously up to that point. *Ramshaw*, 75 Ill. App. 3d at 126.

In *People v. Johnson* (1973), 11 Ill. App. 3d 395, the defendant was convicted of murder in a bench trial. Prior to trial, defendant sought a continuance on the basis that two witnesses, both psychiatrists, would be unavailable to testify in defendant's behalf at trial as it was then scheduled. Defendant's sole defense was that he was insane at the time of the offense and the two psychiatrists were his only witnesses in support of that defense. There was no indication that the case involved protracted proceedings or that continuances had been previously granted. Based on these facts, the appellate court held that the trial court abused its discretion in denying defendant's motion for a continuance. *Johnson*, 11 Ill. App. 3d at 401.

■■ The facts in this case are quite different from those referenced above. As the State correctly points out, the indictment charging defendant with child abduction was issued in February 1988. Initially, in this case and in case No. 88—CF—52, defendant retained private counsel. Said counsel represented defendant in both cases until the completion of trial and sentencing in case No. 88—CF—52 in December 1988. On December 23, 1988, the trial court granted defendant's attorney's motion to withdraw from this case and case No. 88—CF—52 and appointed the office of the public defender to represent defendant in both cases.

Defendant was represented by the public defender's office from the time of appointment in December 1988 until November 1989. In October 1989, the public defender filed a motion for a continuance to provide defendant the opportunity to retain private counsel once again. On October 16, 1989, the trial court granted the motion, but admonished defendant that the case was to proceed to trial on the next available trial date. Attorney Stephen Komie, defendant's present counsel, entered his appearance on November 9, 1989. At that time, Komie indicated that he was fully prepared to proceed with the trial of the instant case which was set for trial on December 4, 1989. The State correctly notes, and defendant does not deny, that at no time during the extended period in which this case was pending,

nor during case No. 88—CF—52, did any of defendant's prior counsel raise the issue of the insanity defense.

Thus, defendant had almost two years from the time of his indictment, or at least 11 months from the time the psychological evaluation relied upon by Dr. Kluczynski was completed, to the time of trial in December 1989 to prepare an insanity defense. While attorney Komie may not have been representing defendant during most of that time, we cannot say that defendant was denied, through no fault of his own, adequate time to prepare his case. (See *People v. Hobbs* (1975), 35 Ill. App. 3d 29, 31 (where case had been continued four times, twice at the request of defendant, and where newly appointed counsel had two days in which to talk to client and interview witnesses, denial of motion for continuance was not an abuse of discretion).) Based on the record before us, and considering the protracted history of this case, we conclude that the trial court's denial of defendant's motion for a continuance was not an abuse of discretion.

Alternatively, defendant argues that if denial of his motion for a continuance was not improper, then he was denied the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Scrutiny of trial counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance. (*People v. Johnson* (1989), 128 Ill. 2d 253, 266.) Thus, judicial inquiry into the competency of counsel will not generally extend to the exercise of judgment, discretion, trial tactics or strategy, even where appellate counsel or a reviewing court might have handled the matter differently. (*People v. Barfield* (1989), 187 Ill. App. 3d 190, 197.) Moreover, defendant may not rely on mere conjecture or speculation that the outcome would have been different with representation of a higher caliber. (*Barfield*, 187 Ill. App. 3d at 198.) It is axiomatic that competency is determined from an examination of the totality of counsel's conduct at trial and that a defendant is entitled to competent, not perfect, representation. *People v. Treadway* (1985), 138 Ill. App. 3d 899, 903.

■ The record in this case reveals that attorney Komie made numerous objections to various aspects of testimony presented by the State, employed effective cross-examination of the State's witnesses,

and presented evidence supporting defendant's alibi and insanity defenses. In addition, though not completely successful, Komie's representation did result in the finding of guilty but mentally ill rather than simply guilty. Throughout the entire proceeding, counsel vigorously tested and challenged the State's evidence and in general did the best that could be expected of him given the time constraints involved. Accordingly, we conclude that Komie's representation did not fall below an objective standard of reasonableness. We need not, therefore, consider the second prong of *Strickland*, whether defendant was prejudiced by counsel's representation.

We would also note that *People v. Rainey* (1986), 149 Ill. App. 3d 327, cited by defendant in support of his ineffective assistance argument, is distinguishable. Prior to trial in *Rainey*, defense counsel moved for a mental examination of the defendant for the purpose of determining whether defendant was fit to stand trial and whether he was legally insane, or at least mentally ill, at the time of the offense. The trial court allowed the motion, and a clinical psychologist was appointed to examine the defendant. The psychologist's report stated her belief that defendant was fit to stand trial. The report further indicated that he was not legally insane at the time of the offense but was mentally ill at that time. The psychologist confirmed her report at a fitness hearing held immediately prior to the bench trial. No evidence concerning defendant's mental condition was introduced, however, at the trial. Such evidence was introduced in mitigation at defendant's sentencing hearing.

On appeal, the defendant argued that he was denied the effective assistance of counsel in that counsel failed to introduce evidence of insanity or mental illness at trial. The appellate court agreed and found that the error did affect the judgment and was prejudicial. (*Rainey*, 149 Ill. App. 3d at 331.) The court noted that the trial judge had stated that, if the proper evidence had been placed before him at trial, he would have found defendant guilty but mentally ill. In addition, the court noted that the evidence of mental illness was readily available to the defense, having been produced at the fitness hearing and reiterated at the sentencing hearing. As such, it was not a case of newly discovered evidence. (149 Ill. App. 3d at 331.) Such is not the case here, and defendant's arguments to the contrary are speculative at best.

Defendant's final arguments are also interrelated. Defendant contends that he was not proved guilty of child abduction beyond a reasonable doubt. Specifically, defendant argues that the State failed to prove that he "attempted to lure" B.N. into his truck, or that he

acted for "other than a lawful purpose." Defendant also argues that the trial court effectively relied on the presumption in the child abduction statute to find that defendant acted with other than a lawful purpose. Defendant maintains that there was no corroborative evidence of his mental state. Therefore, he was not shown beyond a reasonable doubt to have harbored the requisite unlawful intent. We will address first the issue of the statute's presumption.

Section 10—5(b)(10) provides:

"(b)  A person commits child abduction when he or she:

* * *

(10)  Intentionally lures or attempts to lure a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child for other than a lawful purpose.

For the purposes of this subsection (b), paragraph (10), the luring or attempted luring of a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose.

(c)  It shall be an affirmative defense that:

* * *

(4)  The person lured or attempted to lure a child under the age of 16 into a motor vehicle for a lawful purpose in prosecutions under subsection (b), paragraph (10)." Ill. Rev. Stat. 1987, ch. 38, pars. 10—5(b)(10), (c)(4).

Defendant correctly contends, and the State implicitly agrees, that the State is obligated to prove defendant's intent was for "other than a lawful purpose." Defendant initially argues that the statute creates an impermissible mandatory presumption because the statute presumes one element of the offense upon proof of the other elements. He contends that the statement that proof of the other elements of section 10—5(b)(10) "shall be prima facie evidence of other than a lawful purpose" clearly indicates a mandatory presumption.

Mandatory presumptions in criminal cases are unconstitutional because they relieve the State of its burden of proof beyond a reasonable doubt and violate the due process clause by shifting the burden of persuasion to the criminal defendant. (*Francis v. Franklin* (1985), 471 U.S. 307, 313, 85 L. Ed. 2d 344, 352, 105 S. Ct. 1965, 1970.) On the other hand, an entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer an elemental fact from proof of the basic fact, and which places no burden of any kind on the defendant, is clearly permissible. In that situation

the basic fact may constitute *prima facie* evidence of the elemental fact. When reviewing this type of evidentiary device, the Supreme Court has required the party challenging it to demonstrate its invalidity as applied to him. *County Court v. Allen* (1979), 442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 99 S. Ct. 2213, 2224.

■ We find that the child abduction statute does not create a mandatory presumption or improperly shift the burden of proof to the defendant and is therefore not unconstitutional *per se*. (*People v. Marcotte* (1991), 217 Ill. App. 3d 797, 802; see also *People v. Garofalo* (1989), 181 Ill. App. 3d 972, 978.) Rather, we believe that nothing more than a permissive inference is created, since the statute speaks in terms of *prima facie* evidence and there is no restraint on the trier of fact's ability to accept or reject the inference. (*People v. Embry* (1988), 177 Ill. App. 3d 96, 101.) As such, the validity of the permissive inference rests on an evaluation of the inference as applied to the particular defendant on the record before the court. (*Embry*, 177 Ill. App. 3d at 101.) This finding is consistent with our prior decision in *Joyce I*. (*People v. Joyce* (1991), 210 Ill. App. 3d 1059.) In *Joyce I*, we stated that, by failing to instruct the jury that *prima facie* evidence may be rebutted or contradicted, the trial court, by way of the instructions given, "created a mandatory presumption." (*Joyce*, 210 Ill. App. 3d at 1069.) We agree with the State that implicit in such a holding was the belief that the statutory presumption was permissive on its face, not mandatory.

Defendant argues further, however, that for purposes of this issue it does not actually matter if the statutory presumption is held to be permissive or mandatory, since the trial court effectively relied on the presumption alone in finding that the State had proved the unlawful purpose element of child abduction. Defendant contends that, where no corroborative evidence of unlawful intent was presented, he was not proved to have harbored such intent beyond a reasonable doubt.

While the validity of a mandatory presumption is subject to a "beyond a reasonable doubt" test, the validity of a permissive presumption is generally subject to a less stringent test. With permissive presumptions, "there must be a rational connection between the facts proved and the facts presumed, and the ultimate fact must be 'more likely than not to flow' from the basic fact. [Citation.]" (*People v. Hester* (1989), 131 Ill. 2d 91, 99-100.) "Nevertheless, the inference must be supported by corroborating evidence of guilt; if there is no corroborating evidence, the 'leap from the proved fact to the presumed element' must still be proved beyond a reasonable doubt. [Citation.]" *Hester*, 131 Ill. 2d at 100.

In finding defendant guilty of the offense of child abduction, the trial court stated that B.N. was a highly credible witness and that the State had proved the elements of attempted luring and the lack of parental consent beyond a reasonable doubt. Regarding the unlawful purpose element, the court stated as follows:

"The [n]ext issue therefore, is whether the Defendant acted for or with an unlawful purpose. The testimony without wishing to prolong this by going into great detail, was that [B.N.] was walking home, alone, that a pick-up truck pulled off the street into a parking lot near where she was walking, that the driver of that truck who as I indicated earlier had been identified and the Court finds was the Defendant, yelled at her, 'Do you want a ride?' After which she turned around and said no, then continued walking on the course. The Defendant persisted by saying, 'Come on, I don't bite.' When [B.N.] again said no and continued walking, then the Defendant rapidly accelerated, squealing his tires, and drove away. The Defendant—the testimony has been he lived in Elgin at the time and was working either in a school district in Aurora or in a school district in Schaumburg. The testimony further was that the Defendant had a two-day growth of beard and his hair was unkempt. The Defendant was identified approximately a month later very near the same location in a vehicle matching that same description. The testimony was he was identified as he was leaning out of the vehicle. I find that this evidence does meet the standard for proof of an unlawful intent, that would be my finding in the absence of the Statute. I find, as I mentioned earlier, that the Statute has what I regard as a permissible inference. This was defined in People versus Embrey [sic] that I previously cited, and I concur in that conclusion that the preference [sic] to prima facie in the Statute constitutes a permissive inference. Of course, if I apply the inference, I arrive at the same conclusion."

When presented with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261.) A criminal conviction will be set aside, however, where the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. 106 Ill. 2d at 261.

We have reviewed the evidence and conclude that there was sufficient evidence to support the trial court's guilty verdict. The totality of the circumstances here provides corroborating evidence that defendant acted for "other than a lawful purpose." B.N. was the only child who exited the school bus on the day in question. Defendant entered a school bus stop and asked B.N., a stranger, if she wanted a ride. After a rejection, defendant repeated his request with an enticing phrase, "Come on, I don't bite." After a second rejection, defendant drove away from the area quickly, squealing his tires. Approximately one month after this incident, B.N. observed defendant's truck following her as she exited the school bus and walked home. Defendant followed her for a while before he turned and drove away. Under a minute later, B.N. again noticed defendant's vehicle parked behind her friend's mother's car. B.N. then walked to a nearby store and defendant's truck passed by. When B.N. came out of the store, defendant was again driving slowly on that street before turning away 15 feet ahead of B.N.

Viewing these circumstances in their entirety, a fact finder could infer that defendant had an unlawful purpose. The fact that defendant was a stranger, he repeated his offer of a ride, he fled the scene quickly, and a month later followed B.N., are all actions in which unlawful purpose can be inferred. Taken together, these facts are sufficient corroborating evidence of guilt to support the presumption of unlawful purpose. See *Hester*, 131 Ill. 2d at 100.

■■ Finally, the dissent claims that defendant was prejudiced by the trial court's use of the January 1988 incident as evidence of his "unlawful purpose." Defendant has waived this issue by failing to raise it in a post-trial motion (*People v. Burrows* (1992), 148 Ill. 2d 196, 229), and by failing to raise this issue in his brief. Under plain error analysis, Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), we believe the result would be no different. We note that other crimes evidence may be admitted for some purpose other than to establish the defendant's propensity to commit the crime. (*People v. King* (1986), 109 Ill. 2d 514, 530.) Thus, the trial court's use of the January 1988 incident as evidence of defendant's intent was not error *per se.*

Further, we believe that defendant was not prejudiced by the trial court's *sua sponte* reconsideration of its ruling to limit the admissibility of evidence concerning the January 1988 incident. In *People v. Thingvold* (1989), 191 Ill. App. 3d 144, *aff'd* (1991), 145 Ill. 2d 441, the trial court allowed evidence to be admitted solely for the purpose of enhancing witness credibility, which is error. (*Thingvold*, 191 Ill. App. 3d at 151.) Here, the trial court used the evidence for a proper

purpose: as evidence of intent. In addition, testimony concerning the January 1988 incident had already been presented, albeit for the limited purpose of identification. This is not a case where trial strategy is substantially affected by the trial court's reconsideration.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

DUNN, J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent from that portion of the majority opinion which concludes that there exists sufficient corroborating evidence of defendant's "unlawful purpose" to sustain the trial court's guilty verdict.

The majority states that "[t]he totality of the circumstances here provides corroborating evidence that defendant acted for 'other than a lawful purpose.'" (234 Ill. App. 3d at 413.) In support thereof, the majority notes (1) that B.N. was the only child that exited the school bus on the day in question; (2) that defendant, a stranger, asked B.N. if she wanted a ride; (3) that defendant repeated his request with the "enticing" phrase, "I don't bite"; and (4) that defendant then drove away quickly and squealed his tires. The majority also focuses much of its attention on a subsequent incident, occurring approximately one month after the December 1987 incident for which defendant was indicted, wherein defendant again allegedly followed B.N. on her way home from school.

As to the first circumstance relied upon by the majority, that B.N. was the only child that exited the school bus, I fail to see the connection between that fact and the unlawful intent allegedly harbored by defendant. The second and third circumstances, that defendant, a stranger, asked B.N. if she wanted a ride and then repeated the request by stating, "I don't bite," relate directly to the first and third elements of the child abduction statute, *i.e.*, attempt to lure without parental consent. Thus, rather than identifying any independent, corroborative evidence of unlawful purpose, the majority simply relies on the above facts, which actually constitute separate elements of the offense that the State is required to prove, and states that such facts constitute corroborating evidence of the final element of the offense. Moreover, I do not believe the phrase, "[c]ome on, I don't bite," to be any more "enticing," as the majority puts it, or any more indicative

of an unlawful purpose than the phrase "[c]ome on, I won't hurt you" or simply "[c]ome on."

The fourth circumstance noted by the majority is that, after being rejected, defendant drove away from the area quickly, squealing his tires. Although this is not entirely clear, I must assume the majority mentions this fact as evidence of flight from the alleged crime scene, from which a guilty conscience, and therefore an unlawful purpose, might be inferred. However, evidence of flight is usually related in some way to police confrontation. In fact, this court long ago stated that the word "flight" was "commonly understood as connoting evasive action rather than a mere leaving of the scene." (*People v. Hurley* (1968), 100 Ill. App. 2d 167, 170.) The accused must be attempting to avoid arrest or detection, actions which imply a consciousness of guilt. *People v. Henderson* (1976), 39 Ill. App. 3d 502, 507.

Here, I find the defendant's actions in leaving the scene to be somewhat ambivalent, and not necessarily indicative of a guilty conscience. Instead, defendant's actions might actually be viewed as inconsistent with a guilty conscience when one considers the fact that, when B.N. again saw defendant in January 1988, he was, as the majority points out, "almost standing up in the driver's seat and his upper body was hanging out of the window." (234 Ill. App. 3d at 400.) These do not appear to be the actions of a person "attempting to avoid arrest or detection." *Henderson*, 39 Ill. App. 3d at 507.

However, it is the trial court's, and the majority of this court's, treatment of the fifth factor, the January 1988 incident, that to me is most troublesome. Prior to trial, the trial court had granted a defense motion *in limine* to bar the introduction of other crimes evidence. At trial, the court allowed B.N. to testify, over defendant's objection, about the January 1988 incident. The trial court explicitly stated, though, that it was allowing the evidence for identification purposes only. In fact, the trial judge made it quite clear that he would not consider the later incident as evidence of defendant's intent.

In finding defendant guilty of child abduction, however, the trial judge then did exactly that which he had expressly stated he would not do. The court stated, in part:

> "The [n]ext issue, therefore, is whether the Defendant acted for or with an unlawful purpose. *** The Defendant was identified approximately a month later very near the same location in a vehicle matching that same description. The testimony was he was identified as he was leaning out of the vehicle. I find that this evidence does meet the standard for proof of an un-

lawful intent, that would be my finding in the absence of the Statute."

From these remarks, I think it is obvious that the trial court did in fact consider the evidence of the second incident, not only for identification purposes, but also as evidence of defendant's intent, contrary to the court's earlier ruling. The majority only compounds the trial court's error when it too relies on the second incident as corroborating evidence of an unlawful purpose.

In *People v. Thingvold* (1989), 191 Ill. App. 3d 144, the defendant, who was charged with solicitation in connection with the murder of his wife, successfully moved *in limine* to exclude evidence of the murder from the trial. As the defense neared the end of its case in chief, however, the trial court, pursuant to a State motion to reconsider its prior ruling, held that evidence of the murder could be admitted for the limited purpose of judging witness credibility. As a basis for reversing the defendant's conviction, this court found, in part, that the defendant had been prejudiced by the manner in which the evidence of the murder was admitted. (*Thingvold*, 191 Ill. App. 3d at 152.) Noting that prejudice may result when a decision at trial is made in reliance on an evidentiary ruling that is later reversed, we held that the defendant was in fact prejudiced where the trial court reversed its previous ruling at the end of defendant's case and where defendant's trial strategy relied on the court's order excluding evidence of the murder. 191 Ill. App. 3d at 152; see also *People v. King* (1986), 109 Ill. 2d 514, 534.

I believe the prejudice to defendant in this case to be even more apparent than it was to the defendant in *Thingvold*. Here, not only is it altogether likely that decisions were made at trial in reliance on the court's *in limine* ruling, the basis for that reliance was reinforced during trial, when the court assured defendant that evidence of the second incident would not be considered as evidence of his intent. Moreover, while the court in *Thingvold* changed its ruling toward the end of the defendant's case in chief, here it was not until the court had heard all the evidence and was rendering its verdict that the court apparently changed its ruling to allow and consider evidence of the January incident on the question of defendant's intent. Under these circumstances alone, I believe a new trial would be warranted. *Thingvold*, 191 Ill. App. 3d at 152.

In its brief, the State relies on the same evidence as did the trial court in support of its argument that defendant was proved guilty beyond a reasonable doubt. However, neither the State nor the trial court identified any specific, corroborative evidence of defendant's un-

lawful intent. Rather, the trial court simply concluded, based on the evidence supporting the other elements, that such intent existed. The State argues that defendant's actions "certainly smack of insidious design" and that defendant himself offered no evidence that his purpose was lawful. In addition, the State argues that there is a "rational connection" between defendant's conduct, attempted luring without parental consent, and the inference of unlawful intent. The State also contends it is "more likely than not" that defendant harbored an unlawful intent. I believe it is clear from these statements that the State simply ignores the standard of proof necessary, even with permissive inferences, where no corroborating evidence is presented. *People v. Hester* (1989), 131 Ill. 2d 91, 100.

Based on the record before this court, I would conclude that there was insufficient evidence to support the trial court's guilty verdict. There is simply no independent, corroborating evidence that defendant acted for "other than a lawful purpose," and I fail to see how the trial court could have reached such a conclusion without reliance on the statutory presumption, the trial judge's statement that he did not so rely notwithstanding. As such, the statutory inference, though constitutionally sound on its face, was impermissibly applied to defendant under the circumstances of this case. Absent corroborating evidence, the "leap from the proved fact to the presumed element" must still be proved beyond a reasonable doubt. (*Hester*, 131 Ill. 2d at 100.) The State has failed in this regard, as evidenced by its continued reliance on the "rational connection/more likely than not" standard of proof.

As a final observance, I would note that in *Joyce I* this court held, "without unnecessarily protracted comment," that defendant was proved guilty beyond a reasonable doubt. (*People v. Joyce* (1991), 210 Ill. App. 3d 1059, 1069.) In that case, however, the State introduced evidence of three statements made by defendant, before and after his arrest, which suggested a sexual purpose for defendant's conduct. (*Joyce*, 210 Ill. App. 3d at 1063-64.) As indicated, no such corroborative evidence was presented in the instant case.